UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FCOA, LLC,

    Plaintiff,

vs.                                              CASE NO. 1:17-cv-23971-KMW

FOREMOST TITLE &
ESCROW SERVICES, LLC,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS**

Plaintiff FCOA, LLC ("FCOA"), by and through undersigned counsel, hereby responds to Defendant FOREMOST TITLE & ESCROW SERVICES, LLC's ("FT&E") motion for sanctions brought pursuant to Rule 11. FT&E's motion asserts that FCOA's complaint was signed in violation of Rule 11, and thus that this entire action is frivolous, because FCOA has no evidence supporting its claim that there is a likelihood of consumer confusion between the parties' marks. (Doc. 30).

Respectfully, FT&E's motion is an improper attempt to convert a disagreement over the factual allegations and legal arguments in this case into a sanctions battle. As explained below, FT&E's motion should be denied because (1) it improperly seeks disposition on the merits through a Rule 11 motion, (2) it is brought prematurely before discovery has even begun, and (3) FCOA's claim of a likelihood of consumer confusion has some evidentiary support, is warranted by existing law, and is not brought for an improper purpose.

1

I.  **PROCEDURAL BACKGROUND**

Insurer and insurance agent FCOA bring this action against insurance agent FT&E alleging (1) trademark infringement under 15 U.S.C. §§ 1114 and 1116; (2) unfair competition and false designation of origin under 15 U.S.C. § 1125(a); (3) dilution under 15 U.S.C. § 1125(c); (4) common law unfair competition; and (5) antidilution under section 495.151, Florida Statutes. (Doc. 1). Generally speaking, FCOA, which owns many registered trademarks related to the word "FOREMOST," alleges that FT&E is infringing FCOA's marks by offering insurance services under the similar service mark "FOREMOST TITLE & ESCROW." (Id.).

This case is very young. FCOA filed a verified complaint in October 2017 which FT&E has answered. (Id.; doc. 20). In addition, FCOA filed a motion seeking a preliminary injunction to which FT&E responded. (Docs. 5, 22). FCOA replied. (Doc. 26). Naturally, in their memoranda, the parties briefed the issue of whether there is a likelihood of consumer confusion between the parties' marks as this is an element of FCOA's claims. (Doc. 5 at 6-19; doc. 22 at 5-19; doc. 26 at 2-9). Nothing else has occurred – an initial scheduling order has not been issued, no discovery has been served, no Rule 26 disclosures have been made, the Rule 26(f) conference has not taken place, and no other motion has been filed. The Court has made no finding of fact or law related to this case.

FT&E recently filed a motion seeking sanctions against FCOA pursuant to Rule 11. (Doc. 30). The motion incorporates FT&E's response to FCOA's motion for preliminary injunction, and essentially recasts that response *as* its motion for sanctions. The arguments in each document are essentially the same.

Boiled down, FT&E asserts that this entire action violates Rule 11 because there is no likelihood of consumer confusion between the parties' marks. (Id. at 4, 6, 8 ("there is not a single

factor that weighs in favor of Plaintiff such that there is a likelihood of consumer confusion)). In other words, FT&E's motion is premised solely upon the argument that FCOA is violating Rule 11 by maintaining the position that consumer confusion is likely here, and upon no other grounds. (Id.). This means FT&E is asserting that FCOA is violating Rule 11 by maintaining a position for which the Eleventh Circuit recognizes "there is no bright line test." Custom Mfg. & Eng'g, Inc. v. Midway Servs, Inc., 508 F.3d 641, 651 (11th Cir. 2007).

**II.     FT&E'S MOTION SHOULD BE DENIED AS AN IMPROPER MECHANISM TO ACHIEVE RESOLUTION ON THE MERITS AND AS PREMATURE**

A Rule 11 motion is not an avenue to seek judgment on the merits of an action; it is not a mechanism to resolve a lawsuit. Rather, a Rule 11 motion determines only a collateral issue – whether an attorney abused the judicial process. Lawson v. Secretary, Dep't of Corr., 2014 WL 1491862 *1 (11th Cir. 2014) citing Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 396 (1990). Thus, Rule 11 should not be used to raise issues as to the legal sufficiency of a claim or defense that can be disposed of by a dispositive motion or trial on the merits. Bigford v BESM, Inc., 2012 WL 12886184 *2 (S.D. Fla. 2012).

Both the Eleventh Circuit and the Federal Rules Advisory Committee have stated that Rule 11 sanctions are normally determined at the end of litigation. Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998); Donaldson v. Clark, 819 F.2d 1551, 1555 (11th Cir. 1987); Fed.R.Civ.P. 11 advisory committee's note. Thus, when the challenged conduct is the institution of the action itself, the question of whether there has been a Rule 11 violation is generally not decided until after resolution of the litigation has been completed. Wright & Miller, Federal Practice & Proc.: Civil 3d. § 1337.1 (2004); Lichtenstein v. Consolidated Serv. Group, Inc., 173 F.3d 17, 23 (1st Cir. 1999) (it is "sensible practice" to defer consideration of sanctions motions which challenge the institution of the entire action until after litigation is completed). Consistent with these principles,

3

it is premature to consider Rule 11 sanctions against a plaintiff early in the litigation largely because it is not feasible at that stage to determine whether the allegations of a complaint are objectively frivolous.  See, e.g. Bigford, 2012 WL 12886184 at *2; KB Home v. Smith, 2014 WL 12621583 *2 (M.D. Fla. 2014).

FT&E's motion should therefore be denied for two reasons, each of which is alone sufficient to require its denial.

First, FT&E is improperly attempting to utilize a Rule 11 motion to dispose of this case. There are mechanisms established in the federal rules to dispose of cases on the merits, and a Rule 11 motion is not one of them.  FT&E did not move to dismiss FCOA's complaint, but instead answered it.  Now its primary mechanisms to dispose of this case are either summary judgment or trial.  The Court ought not utilize FT&E's Rule 11 motion as a potentially dispositive motion, and instead should dispose of this case through the avenues established in the Federal Rules of Civil Procedure for doing so, and later consider FT&E's Rule 11 motion only if it prevails.  The Court should deny FT&E's motion for this reason alone.

Second, "the reasonable inquiry standard of Rule 11 does not preclude a plaintiff from establishing the merits of its claim through discovery."  Donaldson, 819 F.2d at 1561; Musson v. Bradshaw Const. Corp., 2013 WL 6383843 *5 (S.D. Fla. 2013) (examining deposition transcripts obtained during discovery when analyzing whether complaint violated Rule 11).  Thus, a court may deny a Rule 11 motion premised upon a lack of factual support for the complaint when the plaintiff has not been given opportunity to conduct discovery into the very facts alleged in it. Though FCOA believes it does not need discovery to illustrate that its claims have factual support – an analysis of the likelihood of consumer confusion factors plainly shows support for FCOA's position – FT&E's motion does seek a ruling that FCOA's claims have no factual support before

giving FCOA an opportunity to conduct discovery.  This is a second reason to deny FT&E's motion – FCOA ought not be precluded now from attempting to establish the merits of its claim through discovery.  Rule 11 sanctions are an "extraordinary remedy" to be exercised with "extreme caution," Bigford, 2012 WL 12886184 at *2, so the Court should deny FT&E's motion as premature.

FCOA respectfully requests the Court deny FT&E's motion for sanctions upon both grounds. See, e.g., Bigford, 2012 WL 12886184 at *2 (denying Rule 11 motion because "the parties have until January 2013 to complete discovery; thus any request for a determination that Plaintiff lacks sufficient evidence to prove her case is premature"); KB Home, 2014 WL 12621583 at *2 (denying Rule 11 motion as improper premature attempt to dispose of case); Baker, 158 F.3d at 523 ("Rule 11 sanctions will normally be decided at the end of the litigation").  In addition, FCOA respectfully requests the Court award FCOA a reasonable attorneys' fee incurred in defending against FT&E's motion, as Rule 11(c)(2) allows.

### III. FCOA'S ACTION DOES NOT VIOLATE RULE 11

Even if the Court were to consider FT&E's motion on its merits now, it should be denied because FCOA's allegation that there exists a likelihood of consumer confusion between the parties' marks has some evidentiary support, is warranted by the existing law, and is not brought for an improper purpose.  This is explained in FCOA's motion for preliminary injunction and its reply memorandum (docs. 5, 26), which FCOA respectfully incorporate herein, but FCOA will enumerate this again here.  FCOA will address these issues in turn.

#### A. FT&E's Burden As Movant

It is important first to enumerate the exceedingly high burden which a party seeking Rule 11 sanctions must satisfy.

5

Rule 11 sanctions are an "extraordinary remedy" to be exercised with "extreme caution." Bigford, 2012 WL 12886184 at *2. They are "narrowly cabined" and must be imposed "sparingly" because they may have significant impact beyond the merits of an individual case and may affect the reputation and creativity of counsel. Hartmax Corp. v. Abboud, 326 F.3d 862, 867 (7th Cir. 2003). Any doubts as to whether Rule 11 has been violated should be resolved in favor of the non-movant. Miller v. Relationserve, Inc., 2006 WL 5849318 *9 (S.D. Fla. 2006). And the burden of proof is on the Rule 11 movant, so it is FT&E which must provide adequate evidence that this extraordinary remedy ought to be employed. McMahan Securities Co. L.P. v. FB Foods, Inc., 2006 WL 2092643 *2 (M.D. Fla. 2006).

As the Eleventh Circuit has made clear, "Rule 11 is intended to deter claims with *no* legal or factual basis at all." Davis v. Carl, 906 F.2d 533, 538 (11th Cir. 1990) (emphasis in original). A party therefore violates Rule 11 only when its filing "enjoys no factual or legal support in the record." Industrial Risk Insurers v. MAN Gutehoffnungshutte GmbH, 141 F.3d 1434, 1448 (11th Cir. 1989).

A Rule 11 motion may only be granted if the movant can prove that its opponent filed a pleading in which (1) the claims are not warranted by the existing law or a non-frivolous argument for its extension, (2) the factual contentions have no evidentiary support and are not likely to have any evidentiary support after a reasonable opportunity for discovery, or (3) the claim is presented for an improper purpose such as harassment. Fed.R.Civ.P. 11(b).

When ruling on a Rule 11 motion for sanctions, a district court performs a two-party inquiry: First, the Court must determine whether the non-movant's claims are *objectively* frivolous (or brought in bad faith) and, second, whether the person who signed the pleadings should have been aware of this. Byrne v. Nezhat, 261 F.3d 1075, 1105 (11th Cir. 2001). Consistent with the

language of the rule itself, the first prong of this inquiry is established only when a party files a pleading (1) that has *no* objectively reasonable factual basis at all, (2) that has *no* objectively reasonable chance of success under the law, or (3) in bad faith and with an improper purpose. Donaldson v. Clark, 819 F.2d 1551, 1556 (11th Cir. 1987).

A factual claim is frivolous only if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis because it either is supported by no evidence or by patently frivolous evidence. Davis v. Carl, 906 F.2d 533, 538 (11th Cir. 1990). A legal claim, on the other hand, is frivolous only if no reasonably competent attorney could conclude that it has any reasonable chance of success. Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252, 1254 (11th Cir. 1996).

If the first prong is satisfied, the second prong focuses on whether the lawyer should have been aware that the claims were frivolous when he or she made the filing at issue, "that is, whether he would have been aware had he made a reasonable [prefiling] inquiry." Jones v. International Riding Helmets, Ltd., 49 F.3d 692, 695 (11th Cir. 1995). Thus, the Court's inquiry focuses only on the merits of the facts and law known or available to the attorney at the time of filing. Souran v. Travelers Ins. Co., 982 F.2d 1497, 1508 (11th Cir. 1993).

All in all, "this means that Rule 11 sanctions are warranted when a party demonstrates a deliberate indifference to obvious facts, but not when evidence is merely weak or the case is brought as a result of poor judgment." Benavides v. Miami Atlanta Airfreight, Inc., 612 F.Supp.2d 1236, 1239 (S.D. Fla. 2008) citing Davis, 906 F.2d at 537. Thus, even if case is based on the misapplication of law and has little chance of success, sanctions are not warranted so long as the claim is not completely and utterly baseless. Id. at 1240. Even if the weight of authority and logic

fully supports the opposing party, this is a "far cry" from concluding that a claim is "baseless in the extreme" and therefore sanctionable.  Id.

Here, FT&E contends that FCOA's action is frivolous because there is no likelihood of confusion between the parties' marks.  (Doc. 30 at 4, 7-8).  FT&E claims that none of the likelihood of confusion factors weigh in favor of FCOA.  (Id. at 8).  That is incorrect but it is also not the question.  The question is *not* whether the factors ultimately weigh in favor of FCOA, but whether there is *any factual evidence tending to show that they could.*

Consider for a moment how this burden applies to FT&E's motion.  The law does not recognize a bright line test for likelihood of consumer confusion.  Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 651 (11th Cir. 2007).  Instead, courts employ a multifactorial, seven-topic test.  Frehling Enters., Inc. v. Int'l Select Group, Inc., 192 F.3d 1330, 1335-41 (11th Cir. 1999).  So, FT&E must show that FCOA has taken a position which has absolutely no factual or legal basis at all upon a question for which there is *no bright line test* but which instead is measured using *seven* separate factors *which carry varying importance depending on the case*.  This is logically a difficult showing for FT&E to make; it is not difficult to have some evidence supporting a seven-factor test.

### B. There is a Factual and Legal Basis for FCOA's Assertion of a Likelihood of Consumer Confusion

There is some factual and legal support for FCOA's assertion that there exists a likelihood of consumer confusion between the parties' marks.  The ultimate question is whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.  Custom Mfg., 508 F.3d at 649.

The first factor is the strength of FCOA's marks, including whether they have reached incontestable status, the types of mark they are, and the degree to which third parties make use of the marks. Frehling Enters., 192 F.3d at 1335. No factor is more important than this one. Id.

Here there is evidence that all four FOREMOST Marks have reached incontestable status, which tends to show that the marks are strong. Dieter v. B&H Indus. of Southwest Fla, Inc., 880 F.2d 322, 329 (11th Cir. 1989). There is also evidence that FCOA has used these marks in commerce for over 60 years, and that a court found FCOA's trademark FOREMOST to be strong over 30 years ago.[1] (Doc. 5 at 10-11). There is evidence that the FOREMOST brand is used in connection with nearly 40,000 insurance agents nationwide, 3,000,000 customers, and the offering of numerous lines of insurance including homeowners' insurance (doc. 5 at 11), which also tends to show that the marks are strong (and entitled to broad protection).[2] Coach House Restaurant, Inc. v. Coach & Six Restaurants, Inc., 934 F.2d 1551, 1561 (11th Cir. 1991); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175 (9th Cir. 1988). There is also evidence that third parties are not using similar marks – no trademarks registered in the United States Trademark Registry show use of the term "Foremost" in the insurance services field (and no trademarks in Trademark International Class 36, which includes the insurance and financial fields, use the term "Foremost" in connection with insurance) – which also tends to show the FOREMOST Marks are strong. John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 975 (11th Cir. 1983). Thus, there is significant evidence tending to show that FCOA's marks are strong. Indeed, in FCOA's view, there is enough evidence to *establish* that its marks are strong, but that is not the question now.

---

[1] These four marks were registered in 1978, 1998, 1952, and 1984.
[2] Additional facts on this subject are enumerated in FCOA's motion for preliminary injunction and reply memorandum in support thereof. (Doc. 5, 22).

The second factor is the overall similarity of the two marks in sound, appearance, manner of use, and overall commercial impression. Frehling Enters., 192 F.3d at 1335. There is evidence that FCOA's and FT&E's marks are similar. (Doc. 5 at 13). Both are rectangular. They both utilize the word "Foremost" in lettering which is bold and which lies directly above other wording which is smaller and non-bold. They both contain a stylized letter "F" contained in a square logo to the left of the mark. (Id.). Thus, there is some evidence tending to show that the marks are similar.

The third factor is the similarity of the products the marks represent. Id. The question is whether consumers could attribute the parties' services to the same source or might believe there is an affiliation between the parties. E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc., 756 F.2d 1525, 1530 (11th Cir. 1985); Brookfield Comm'ns, Inc. v. West Coast Enter. Corp., 174 F.3d 1036, 1056 (9th Cir. 1999). This third factor is established if the goods are complementary in some manner such that they would likely be encountered by the same persons in situations that would give rise to a mistaken belief either that they are somehow associated with the same singular source or that there is some association between the two sources of the respective goods. Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 258 (2d Cir. 1987); Dreyfus Fund, Inc. v. Royal Bank of Canada, 525 F.Supp. 1108, 1120 (S.D. N.Y. 1981). Direct competition between the two services is therefore not required. Team Tires Plus, Ltd v. Tires Plus, Inc., 394 F.3d 831, 833-34 (10th Cir. 2005).

FCOA is an insurance company which sells various insurance products, including homeowners' insurance, mobile home insurance, and business insurance covering buildings and structures, through insurance agents. (Doc. 5 at 10-11, doc. 26 at 6-7). FCOA is also an insurance agent itself. (Doc. 5 at 17). FT&E is an insurance agent who sells title insurance. (Doc. 22 at 9;

doc. 22-1 ¶ 8).  Both entities are therefore not only involved in the insurance business, but both are insurance agents involved in those particular types of insurance a consumer typically purchases when buying a home or structure.  These are similar products under the law.  <u>Prudential Ins. Co. of Am. v. Prudential Title Co.</u>, 1976 WL 21080 *1 (S.D. Tex 1976) (property insurer and title company held to be engaged in similar services); <u>American Fid. & Lib. Ins. Co. v. American Fid. Grp.</u>, 2000 WL 1385899 *10 (E.D. Pa. 2000) (different types of personal insurance "serve similar functions in the mind of the public"); <u>Nationwide Mut. Ins. Co. v. Tri-Continental Exch., Ltd.</u>, 2001 WL 34398158 (C.D. Cal. 2001) (question is whether services might be related in the mind of consumers, not whether defendant offered specific insurance identical to plaintiff); <u>In re Opus One, Inc.</u>, 60 U.S.P.Q.2d 1812 (TTAB 2001) (restaurant services and wine deemed complementary because the public encounters them together).  There is thus some evidence that the parties' products are sufficiently similar or complementary for consumer confusion purposes.

   The fourth and fifth factors are the similarity of the parties' customers, trade channels and advertising media.  <u>Frehling Enters.</u>, 192 F.3d at 1335.  The parties' customers are virtually identical.  Both parties are acting as insurance agents to sell insurance policies.  Both parties' products are purchased by persons who are buying homes or other structures – FCOA is selling insurance for homes and other structures while FT&E is selling title insurance.  Many, many consumers simultaneously buy homeowners' insurance and title insurance every day in real estate transactions.  Both parties may therefore naturally desire to market insurance policies to persons who are buying homes or buildings – FCOA because it issues and acts as the agent for issuance of homeowners' and other insurance for buildings, and FT&E because it issues title insurance.  Both parties utilize online advertising and websites.  (Doc. 5 at 17).  Finally, a consumer seeking to employ an insurance agency by searching myfloridacfo.com for the word "Foremost" will find

11

both parties, and no one else, in the search results. (Id.). These facts are evidence that parties' customers have some similarity, and their trade channels and advertising media are similar.

The sixth factor is the defendant's intent: a likelihood of consumer confusion is more apt to exist if the defendant intended to utilize a mark similar to the plaintiff's. Frehling Enters., 192 F.3d at 1335. However, evidence of a defendant's intent is not necessary to establish that consumer confusion is likely, Jellibeans, Inc. v. Skating Clubs of Ga, Inc., 716 F.2d 833, 843 (11th Cir. 1983), so it is plainly not a violation of Rule 11 to proceed with a trademark infringement case without evidence of the defendant's intent. Further, at least some courts have held that an inference of intent to confuse consumers is present where there is a striking similarity between the marks. Reader's Digest Ass'n, Inc. v. Conservative Digest, Inc., 821 F.2d 800, 804 (D.C. Cir. 1987); MY-T Fine Corp. v. Samuels, 69 F.2d 76, 77 (2d Cir. 1934). In addition, because this case is so young, FCOA has had no opportunity to yet discover precisely why and under what circumstances FT&E chose to use the term "Foremost" as its mark rather than the nearly infinite universe of other marks FT&E could employ. Often, intent must be proved by circumstantial evidence. Tancogne v. Tomjai Enterprises Corp., 408 F.Supp.2d 1237, 1249 (S.D. Fla. 2005) citing Jellibeans, Inc., 716 F.2d at 843.

The seventh factor is actual confusion. Frehling Enters., 192 F.3d at 1335. Actual confusion is also not necessary to illustrate a likelihood of consumer confusion, id., so it is plainly not a violation of Rule 11 to proceed with a trademark infringement case without evidence of actual confusion either. FCOA has not been given the opportunity to discover from FT&E whether it has encountered any actual confused customers.

Here, then FCOA has provided some evidence that consumers could likely be confused by the parties' marks. There is no bright line test for this rule of law, but FCOA has evidence that its

12

marks are strong, which is the most important factor – the marks have reached "incontestable" status, have been used for over 60 years, and were recognized by a federal district court as strong over 30 years ago. FCOA has evidence that the parties' marks are similar in appearance in shape, wording and overall layout. FCOA has evidence that the parties operate in the same industry – insurance. They are both insurance agents (while FCOA is also an insurance company) whose insurance products are utilized by consumers purchasing property and buildings. Property insurers and title companies have been held to be engaged in similar services before. Prudential, 1976 WL 21080 at *1. FCOA has evidence that the parties have the same customers and advertise in the same channels.

FCOA has not violated Rule 11 here. Rule 11 sanctions are an "extraordinary remedy" to be exercised with "*extreme* caution" and with all doubts resolved in favor of FCOA. Bigford, 2012 WL 12886184 at *2 (emphasis added); Miller, 2006 WL 5849318 at *9. It certainly is not "completely and utterly baseless" to assert that consumers could likely be confused in the circumstances explained above. Benavides, 612 F.Supp. at 1240. There is some factual evidence supporting each Frehling factor (except for the unnecessary ones, upon which no discovery has occurred), and therefore FCOA's claims have some factual and legal support.[3] FCOA is not bringing a cause of action which has "*no* legal or factual basis at all." Davis, 906 F.2d at 538 (emphasis in original).[4] While FT&E may have opposing evidence and arguments, that is

---

[3] Indeed, they have more than just *some* factual and legal support, but that is not the question now.

[4] Stated differently, there are many reasonably competent attorneys in Florida, and it cannot be said that none of them – *not one* – could reasonably believe that there may be a likelihood of consumer confusion in these circumstances.

irrelevant now. Because there is some legal and factual basis for FCOA's claim, the Court must deny FT&E's motion.

Much of FT&E's argument is premised upon the assertion that its counsel Robert Stok informed FCOA's prior counsel Alicia Groos that he believed FCOA's trademark infringement claims would fail – FT&E expends several pages explaining purported presuit conversations between Mr. Stock and Ms. Groos. (Doc. 30 at 2, 3). Mr. Stok claims that eventually Ms. Groos agreed that FT&E did not infringe on FCOA's marks and stated that FCOA would not sue FT&E, which FT&E now asserts is evidence that FCOA is pursuing this action frivolously. (Id. at 3). As the Court is by now aware, Ms. Groos disagrees with that statement. She has sworn under oath that Mr. Stok's characterization of their telephone conversation is inaccurate and inconsistent with her recollection. (Doc. 26-2 at 2).

This is all irrelevant anyway. A Rule 11 motion ought not be reduced to a literal "he said, she said" about the merits of a case. Many lawyers representing defendants have told many lawyers representing plaintiffs that they will lose the lawsuit they are considering filing. The purported presuit statements by Mr. Stok to Ms. Groos are simply FT&E's assertions about why he believes FT&E will win this case, which have now found their way into FT&E's response to FCOA's motion for preliminary injunction, and which FCOA has addressed both in its reply and in the instant document. But the question now is not whether FCOA's former counsel Ms. Groos once stated that FT&E was not infringing FCOA's marks (which she did not), whether she said FCOA would not sue FT&E (which she did not) or whether FT&E's counsel believes FT&E should prevail in this lawsuit. The question is whether FCOA's claim of a likelihood of consumer confusion has today any evidence, however scant, which supports it, or any foundation in the law. And it does.

Furthermore, the case cited by FT&E does not apply. Aside from case law which enumerates the general test for Rule 11 sanctions on pages 5 through 8 of its motion, FT&E seems to rely only on Footman v. Cheung, 139 Fed.Appx. 144 (11th Cir. 2005), to supports its assertion that FCOA's counsel has violated Rule 11. (Doc. 27 at 8). However, in Footman, the Eleventh Circuit affirmed sanctions against a lawyer who brought an action under the Americans with Disabilities Act and (1) falsely alleged that his purportedly disabled client had multiple sclerosis, (2) falsely alleged that his client entered the defendant's premises, (3) served his client's interrogatory answers which contradicted the very allegations of the complaint, (4) personally made post-signature changes to his client's sworn interrogatory answers, (5) represented interrogatory answers as sworn when they were not, and (6) filed a frivolous motion to disqualify the district court judge. Footman, 139 Fed.Appx at 146. Nothing like that has happened here.

In conclusion, the Court should deny FT&E's motion if its merits are reached. Whether to grant a Rule 11 motion is a decision entrusted to the Court's discretion, and this case plainly does not warrant sanctions. This is a run-of-the-mill trademark infringement action in which FCOA alleges that there is a likelihood of consumer confusion and has some evidence to support that claim. This assertion is not utterly baseless; FCOA is not pursuing a claim that has no legal or factual basis at all. FCOA has some evidence supporting each applicable Frehling factor, so FCOA's claims have some factual and legal support, which is all that must exist for FT&E's motion to be denied. This factual and legal support is enumerated in the instant document, FCOA's motion for preliminary injunction and its reply memorandum in support thereof. FT&E may disagree with FCOA's factual assertions or the application of those facts to the law, but that is not grounds for Rule 11 sanctions.

The Court should deny the motion and order that FCOA may recover a reasonable fee in defending against it, as Rule 11(c)(2) allows.

### C. This Action Was Not Filed For Improper Purpose

FT&E asserts that FCOA retained counsel "to prosecute this action in bad faith in order to seek to put FT&E out of business" and has "willfully abused the judicial process by conduct tantamount to bad faith." (Doc. 30 at 8, 9). There is no evidence to support this concocted assertion. FT&E does not explain why FCOA might want to put FT&E out of business and there is no evidence that FCOA has any reason to do so (which it does not). There is no evidence that FCOA is trying to harass FT&E, has some ill will against it, or has some pre-existing history with FT&E which shows this lawsuit is part of a plan to harm FT&E. FCOA is simply trying to protect its well-established trademark rights. FT&E has no proof of improper purpose because there is none. The motion should be denied on this ground as well.

Thus again, the Court should deny the motion and order that FCOA may recover a reasonable fee in defending against it, as Rule 11(c)(2) allows.

Respectfully submitted,

 /s/AdrienneLove/
Adrienne C. Love (FL Bar No. 21835)
adrienne@penningtonlaw.com
J. Wiley Horton (FL Bar No. 59242)
wiley@penningtonlaw.com
PENNINGTON, P.A.
215 S. Monroe Street
2nd Floor
Tallahassee, FL  32301
850 222-3533 – office
850 222-2126 – fax
Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that I have electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system on this 12th day of January, 2018 to:

STOK FOLK + KON
18851 NE 29th Ave #1005
Aventura, FL 33180
Attn: Robert Stok
Email: RStok@stoklaw.com
Attorneys for Defendant

                        /s/Adrienne Love/
                        Adrienne Love