**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

FCOA, LLC.,

      Plaintiff,

vs.                                                    CASE NO. 1:17-cv-23971-KMW

FOREMOST TITLE & ESCROW, LLC,

      Defendant.
_____/

**PLAINTIFF FCOA, LLC'S MOTION TO EXCLUDE TESTIMONY OF**
**DEFENDANT'S EXPERTS DAVID MILTON AND CARLOS ZULUAGA**
(with accompanying memorandum of law)

**MOTION**

Plaintiff FCOA, LLC ("FCOA") respectfully moves for the Court to exclude from trial the opinions offered by Defendant FOREMOST TITLE & ESCROW, LLC's ("FT&E") purported expert witnesses David Milton and Carlos Zuluaga. As grounds therefor, FCOA states:

1.    FCOA brings this action against FT&E alleging trademark infringement, dilution, antidilution, unfair competition and unjust enrichment under the Lanham Trademark Act and Florida common law. (Doc. 1). Generally speaking, FCOA, which owns many registered trademarks related to the word "FOREMOST," alleges that insurance agent and closing company FT&E is infringing FCOA's marks by offering insurance services under the similar service mark "Foremost Title & Escrow." (Id.).

2.    FT&E has retained several expert witnesses in this case. This motion seeks to exclude two of them – David Milton and Carlos Zuluaga.

3.    David Milton is a licensed insurance adjuster. (Milton depo. attached as Exhibit 1, at 50:3-6). Mr. Milton's sole opinion is that it is unreasonable to expect that any consumer could

1

be confused between FCOA and FT&E because insurance companies and title companies have different functions.  (Id. p. 31:16-20; doc. 22-3 ¶ 13).  This is an attempt to opine as to the likelihood of consumer confusion under the Lanham Act.

      4.     Mr. Milton did not conduct any testing, research, analysis, or investigation to reach his opinions.  (Milton Deposition, p. 34:4 – 36:11).  He did not "do anything scientific" at all.  (Id. p. 34:4-25).  Rather, he based his opinion solely on his experience working in the insurance industry, conversations with defense counsel, and a conversation with his wife, a layperson.  (Id. pp. 21:1-22:14, 34:4–38:7).  Mr. Milton, who has knowledge of how the property and casualty insurance industry works, spoke with FT&E's counsel Robert Stok to understand how FT&E operates.  (Id. pp. 21:1–22:14).  He then assumed that because he understands the different functions of insurance companies (such as FCOA) and title companies (such as FT&E), consumers also must understand the differences. (Id., pp. 34:4–35:16; doc. 22-3 ¶ 13).  His wife agreed with him, and from this he concluded that no consumer could be confused between FCOA and FT&E. (Milton dep. p. 34:9-23; doc. 22-3 ¶ 13).

      5.     That is not a scientific methodology.  It is speculative and unreliable, and it is not a scientific method to measure the likelihood of consumer confusion amongst the public.  Mr. Milton's opinions should therefore be excluded from trial.

      6.     Carlos Zuluaga (who works for Lion Fuse Digital Media, the company which created FT&E's website) holds four purported expert opinions about FT&E's marketing.  Mr. Zuluaga was identified on FT&E's Rule 26(a)(*1*) disclosures as a *fact* witness in February 2018, was *not* identified on its August 15 Rule 26(a)(*2*) disclosures as an expert witness who may be used at trial, and did not prepare an expert report.  FT&E first disclosed to FCOA that Mr. Zuluaga was a retained expert witness during his September 28 fact witness deposition.

7.      This is a violation of Rule 26(a)(2), which required FT&E to disclose Mr. Zuluaga as an expert witness by August 15 and to produce a proper Rule 26 expert report at that time. Pursuant to Rule 37(c)'s self-executing exclusion of improperly disclosed expert opinion, Mr. Zuluaga's opinions must be excluded from trial.

WHEREFORE, FCOA respectfully requests the Court exclude from trial the opinions of FT&E's experts David Milton and Carlos Zuluaga.

## MEMORANDUM OF LAW

David Milton's opinion should be excluded from trial as based upon pure speculation and is therefore unreliable as a matter of law.

### Mr. Milton's Opinion and Its Basis

Mr. Milton opines that consumers could not confuse FCOA with FT&E.  He states in paragraph 13 of an affidavit:

> Therefore, in my opinion, *it would not be reasonable to expect that a consumer could confuse an insurance company with a title company based upon the two entities having a common word in their names due to the total lack of any logical relationship between business functions of the two entities.*  Moreover, especially where one entity identifies itself in its company name as an insurance company and the other company identified itself as a title and escrow services company, there is no rational basis for there to be any consumer confusion between the two entities that would be reasonable to expect.

(Doc. 22-3 ¶ 13; Milton depo. p. 31:1-4).  At deposition, Mr. Milton confirmed that this was his sole opinion in this matter:

> Q.      Let's do it this way:  Why don't you tell me what expert opinions you intend to offer in his case?
>
> A.      I think that paragraph 13 properly surmises my expert opinion in the case.

3

Q.      Is – am I understanding correctly that the crux of your opinions is that title companies don't assume risk, they don't adjust claims, and therefore, they have a different function than insurance companies, which do, so it's not reasonable for a customer to expect – it's not reasonable to expect that a consumer will confuse them.  Is that a fair encapsulation of your opinion?

A.      That is a fair recap.  Certainly, I would add additional color to that, but yes, sir, that is a fair synopsis of my opinion.

…

Q.      And so the basic reasoning behind your opinion that it's not reasonable to expect a consumer to be confused, is that insurance companies and title companies have two different functions?

A.      Two different functions; that's correct, sir.

…

Q.      And you're offering an opinion about whether it would be reasonable, under certain circumstances, to expect a customer would confuse two sorts of entities.

A.      Yes, sir.

Q.      And the basic reasoning behind your opinion, is that these companies have different functions, so it's not reasonable to confuse them.

A.      Correct.

(Milton depo. pp. 30:10-21, 31:16-20, 32:22-33:4.)

Mr. Milton formed this opinion in no more than three hours of work.  (Id. p. 28:14-19.)  He based it on three things: (1) his experience working in the property and casualty insurance industry (doc. 22-3 ¶¶ 2, 13; Milton depo. pp. 37:21–38:7.); (2) conversations with defense counsel in which counsel described FT&E's functions to him (doc. 22-3 ¶ 13; Milton depo. pp. 21:1–22:14); and (3) a conversation with his wife, a layperson, in which he asked if she understood the difference between homeowners' insurance and title insurance to "tes[t] the hypothesis that no one would be

confused" between them.  (Milton depo. p. 34:9-23).

Mr. Milton did not conduct a survey or perform any other type of scientific analysis to determine whether consumers could be confused by the source of services being provided by an insurance company and a title company. (Id. p. 34:4-9).  Indeed, Mr. Milton did not know what type of scientific analysis experts might use to determine whether consumer confusion exists.  (Id. p. 38:6-10).  Mr. Milton also did not perform any *non*-scientific analysis (other than speaking to his wife) to determine whether an average consumer understands the distinction between an insurance company and a title company.  (Id. p. 35:2-11).  Rather, Mr. Milton assumed that consumers know that an insurance company functions differently, and from that he concluded no person could confuse FCOA and FT&E.  (Id. p. 35:10-16; doc. 22-3 ¶ 13).  Later asking his wife to confirm his hypothesis constitutes the entirety of his analysis on this question:

> Q.     Aside from speaking to your wife –
>
> A.     Yep.
>
> Q.     – did you do anything else to analyze whether consumers –
>
> A.     I did not.

(Milton depo. p. 35:5-9).

### Mr. Milton – Law and Application

FT&E bears the burden of demonstrating that its experts are qualified and that their opinions are reliable.  United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004).  This burden is "substantial."  Cook v. Sheriff of Monroe County, 403 F.3d 1092, 1107 (11th Cir. 2005).

The Court serves as gatekeeper for expert testimony; its function is to "ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony'."  Rink v. Cheminova, 400 F.3d 1286, 1291 (11th

Cir. 2005).  "[D]istrict courts must engage in a rigorous inquiry to determine whether: '(1) the expert is qualified to testify competently regarding the matters he intends to address;  (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'" <u>Id.</u> at 1291-1292 <u>quoting</u> <u>City of Tuscaloosa v. Harcross Chems., Inc.,</u> 158 F3d 548, 562 (11th Cir. 1998).

To determine whether an expert's methodology is sufficiently reliable, courts look to the following non-exclusive factors: (1) Whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community.  <u>United Fire & Cas. Co. v. Whirlpool Corp.,</u> 704 F.3d 1338, 1341 (11th Cir. 2013).

Here, Mr. Milton has formed the opinion that consumers cannot be confused between FCOA and FT&E.  However, an expert testifying on the likelihood of consumer confusion is necessarily testifying as to how potential consumers – that is, other people he or she does not know – are likely to perceive the companies and trademarks at issue.  Thus, "the usual method to introduce evidence on the issue of likelihood of confusion is through consumer surveys." <u>Patsy's Italian Restaurant, Inc. v. Banas,</u> 531 F.Supp.2d 483, 485 (E.D.NY. 2008); McCarthy, J. Thomas, McCarthy on Trademarks and Unfair Competition § 23:2.75 (5th ed. 2018) ("The usual and accepted method of admitting expert testimony on the ultimate factual issue of likelihood of confusion is for the expert to design and have conducted a survey of customers of that product or service").  "Apart from consumer surveys, lay or even expert opinion about the likelihood of

confusion is inadmissible or entitled to little weight." <u>Pharmacia Corp. v. Alcon Labs., Inc.</u>, 201 F. Supp. 2d 335, 376 (D.N.J. 2002) (internal quotations omitted); <u>see also</u> <u>IQ Prods. Co. v. Penzoil Prods. Co.</u>, 305 F.3d 368, 376-77 (5th Cir. 2002) (affirming exclusion of expert testimony regarding effect of misleading statements which were not based on market or survey research).

In <u>Patsy's Italian Restaurant</u>, the plaintiff proffered expert testimony regarding the likelihood of consumer confusion between the parties' trademarks. <u>Patsy's Italian Restaurant</u>, 31 F.Supp.2d at 485. The defendant argued that the expert's opinion was speculative because it was based solely on his own experience and expertise and not on any consumer survey or market research. <u>Id.</u> The district court agreed, stating "Wallace [the purported expert] appears not to have relied on such a consumer survey but, rather, he drew his conclusions based upon his personal knowledge and expertise . . . . Therefore, Wallace's testimony is unreliable as to the issue of likelihood of confusion." <u>Id.</u>

Similarly, in <u>IQ Products</u>, the plaintiff alleged the defendants falsely labeled its tire inflators as non-explosive, thereby misleading consumers. <u>IQ Prods.</u>, 305 F.3d at 370. The plaintiff offered two experts to opine on the effect of this misleading statement on consumer buying decisions. <u>Id.</u> at 376. The district court excluded both experts, stating that their testimony was based on "insufficient data" and "unreliable methodology" because the experts failed to "conduct any market or survey research or [offer] any data that could be subject to testing and verification." <u>Id.</u> The Fifth Circuit agreed, stating the experts were properly excluded because:

> Neither expert conducted reliable survey or market research, commonly employed by market analysts, to support their conclusions that consumers would have purchased IQ's tire inflators were it not for the defendants' allegedly misleading statements about the explosiveness of the product.

<u>Id.</u>

Here, Mr. Milton, an insurance professional by trade, conducted no survey or market research.  He did not "do anything scientific" at all.  (Milton depo. p. 34:4-25).  Rather, he hypothesized that because he understands the difference between insurance companies and title insurance agents (or title companies), consumers could not possibly confuse FCOA and FT&E. (Id. p. 34:4–35:16; doc. 22-3 ¶ 13).  The sole methodology – if it can be called that – which Mr. Milton used to test this "hypothesis" was to ask his wife whether she knew the difference between the two.  (Id. p. 34:9-23).  Her answer was sufficient to convince him his hypothesis that confusion is impossible was sound.  (Id.; doc. 22-3 ¶ 13).

This is not reliable methodology.  It is pure speculation.  Though it may go without saying, "pure speculation may not serve as the basis for expert testimony." Villalobos v. American Airlines, Inc., 1998 WL 1770592 at *2 (S.D. Fla. 1998).  This is true even if the speculation is based on the expert's experience.  deWit v. UPS Ground Freight, Inc., 2017 WL 3141074 *3 (N.D. Fla. 2017).  Mr. Milton assumes first that because he knows the difference between homeowners' insurance companies and title companies, all consumers must know the difference too.  (Milton depo. pp. 35:10-16, 36:2-10).  He then assumes that any consumer who also knows the difference cannot be confused by the two, utilizing no scientific methodology to reach this conclusion, and without considering any more information about consumer perception, the presentation of FCOA's and FT&E's marks, or any other subject.

There is no factual basis for these assumptions.  The reason a consumer survey is the usual and accepted method on the issue of consumer confusion is that it provides a reliable factual basis for the expert to opine on the probable state of mind of consumers. McCarthy § 23:2.75.  Without a consumer survey, the expert is simply speculating on what other people may think.  Patsy's, 531 F.Supp.2d at 485-86.  This is what Mr. Milton is doing.  If Mr. Milton's opinion is admissible

opinion on the subject of consumer confusion under the Lanham Act, then any person who is informed of some differences in the operation of a plaintiff and a defendant has become a testifying expert on the subject of whether consumers could confuse the two.  Mr. Milton's opinions should be excluded from trial.  IQ Prods., 305 F.3d at 376; Pharmacia, 201 F.Supp.2d at 376; Patsy's, 531 F.Supp.2d at 485-86.

Carlos Zuluaga

In addition, the expert opinions of Carlos Zuluaga should be excluded from trial for FT&E's violation of Rule 26(a)(2).  FT&E did not disclose Mr. Zuluaga as an expert witness – indeed, it disclosed him as a fact witness only – but then asserted in the middle of his September 28 deposition that he was a retained expert witness holding expert opinions.  This is a violation of Rule 26 and the Court's scheduling order (doc. 58), which required FT&E to make proper Rule 26 disclosures by August 15.  A bit of background is necessary.

After filing its complaint, FCOA also filed a motion for preliminary injunction.  (Doc. 5).  In November 2017, FT&E filed a written response which attached as one exhibit an affidavit of Mr. Zuluaga.  (Doc. 22-4).  This affidavit does not mention that Mr. Zuluaga is a retained expert, does not appear to contain opinions (as opposed to facts), does not state his hourly rate, and does not identify any facts or data Mr. Zuluaga reviewed at any time.  In short, this affidavit is made by a fact witness who has knowledge about FT&E's marketing, not an expert witness.

In February 2018, FT&E served initial Rule 26(a)(1) disclosures identifying Mr. Zuluaga as a person likely to have discoverable information FT&E may use to support its defenses.  There, FT&E stated that Mr. Zuluaga "is the CEO and Creative Director of Lion Fuse Digital Media, LLC, . . . who was hired by FT&E to perform graphic design services for FT&E, including FT&E's website, . . . and to perform ongoing internet marketing and search engine optimization services

9

for FT&E." (Exhibit 2, FT&E's Rule 26(a)(1) disclosure at 2). No expert is identified on this disclosure (as one might expect) and Mr. Zuluaga is not identified as one. He is held out here as a fact witness.

About six months later, on August 15, 2018, FT&E served its Rule 26(a)(2) expert disclosures. (Exhibit 3, FT&E's Rule 26(a)(2) disclosure). This disclosure does not identify Mr. Zuluaga as an expert witness. He has never prepared an expert report in this matter.

On September 28, FCOA deposed Lion Fuse media's corporate representative on certain noticed topics. (Exhibit 4, Notice of Taking Deposition). Mr. Zuluaga appeared as the corporate representative. Roughly halfway through the deposition, FT&E's counsel informed FCOA's counsel that Mr. Zuluaga was an expert witness. (Exhibit 5, Zuluaga depo. at 53:22-24). FT&E took the position that Mr. Zuluaga's November 2017 affidavit constituted a Rule 26 expert report:

> Q.     Before we left, Mr. Stok said that you're an expert witness in this matter; is that accurate?
>
> A.     Yes.
>
> Q.     Are you retained by Foremost Title & Escrow in this case to serve as an expert witness?
>
> A.     Yes.
>
> Q.     On what subjects?
>
> A.     On anything pertaining to website, email marketing, online marketing, and really any marketing efforts for the company.
>
> Q.     Did you prepare a Rule 26 expert report?
>
> A.     No.
>
> Q.     Do you know what a Rule 26 expert report is?
>
> MR. STOK:         We filed an affidavit.
>
> MR. HORGAN:      Hang on. Let him answer the question first.

MR. STOK:          Okay.

THE WITNESS:     Can I say I don't know?

Q.    Sure, if it's true.  I mean, you should say whatever is true.  Do you know what Rule 26 is?

A.     I don't.

Q.    What opinions do you hold as an expert witness that you intend to give at trial?

A.    Anything that – again, anything that is pertaining to the marketing efforts and website of Foremost.[1]

MR. STOK:          That's the expert report that he filed earlier in the case.  You have known about his involvement as an expert since October of last year.

Q.    Alright.  Tell me what opinions you intend to offer. I understand what the topics are.  Tell me what the opinions are.

MR. STOK:          Why don't we show him his report?

MR. HORGAN:     You can show him his affidavit.

MR. STOK:          Yeah, it's his report.

MR. HORGAN:     I think that may be a point of contention but I understand your view.

(Id. at 54:10-56:4).  Later, Mr. Zuluaga opined that (1) FT&E's branding is not dissimilar to and "is not in any way to be confused" with FCOA's branding (id. at 78:20-25), (2) FT&E is trying to reach a different market than FCOA (id. at 57:6-12), (3) the keywords FT&E uses for search engine optimization are not intended to interfere with any other company (id. at 90:10-91:2), and (4) FT&E's website is "very much meant to align itself" with the law firm of Stok, Folk and Kon.  (Id. at 91:16-22).

---

[1]        For clarity, by this word "Foremost," the witness means FT&E.

Rule 26(a)(2) requires parties to make their expert disclosures "at the times and in the sequence that the court orders." Fed.R.Civ.Proc. 26(a)(2)(D). The Court ordered FT&E to make its expert disclosures by August 15. (Doc. 58). This meant that by August 15, FT&E was required to specifically disclose "the identity of any witness it may use at trial to present [expert] evidence." Fed.R.Civ.Proc. 26(a)(2)(A). Along with that written disclosure, FT&E was also required to serve an expert report which meet certain requirements. Fed.R.Civ.Proc. 26(a)(2)(A) (written disclosure must be "accompanied" by an expert report).

"Compliance with Rule 26's expert witness disclosures rule is mandatory and self-executing." Warren v. Del Vista Towers Condo. Ass'n, Inc., 2014 WL 3764126 *1 (S.D. Fla. 2014). The purpose of the rule is to safeguard against surprise. Id. Thus, courts routinely strike expert reports or exclude expert testimony that is not timely disclosed pursuant to Rule 37(c). Id.

Here, FT&E violated Rule 26 in two fashions, and Mr. Zuluaga's opinions must therefore be excluded. First, FT&E did not disclose Mr. Zuluaga as an expert it may use at trial in its August 15 Rule 26(a)(2) disclosures. In fact, it disclosed him only under Rule 26(a)(1) and only informed FCOA that he held expert opinions it may desire to adduce at trial during his September 28 deposition as a fact witness. That is an untimely disclosure to FCOA that FT&E may use Mr. Zuluaga as an expert at trial.

Second, Mr. Zuluaga has not prepared a Rule 26 report. His November 2017 affidavit is not a Rule 26 expert report. It does not purport to be an expert report, does not state that he is a retained expert witness, does not mention that Mr. Zuluaga holds opinions, does not identify any facts or data he reviewed, and does not mention his hourly rate. Fed.R.Civ.P. 26(a)(2)(B). This is an affidavit submitted by a fact witness, not a Rule 26 expert report.

And even if the affidavit did constitute an expert report – which it does not – FT&E still did not disclose Mr. Zuluaga as an expert *it may use at trial* when its time came to do so on August 15.  FT&E was always obligated to do this by the plain language of the rule but did not.  Instead it only informed FCOA that it may use Mr. Zuluaga at trial on September 28.  Under the self-executing provisions of Rule 26 and 37, his opinions are inadmissible at trial.

Respectfully submitted this 2nd day of November 2018.

/s/ Adrienne C. Love
Adrienne C. Love (FL Bar No. 21835)
adrienne@penningtonlaw.com
J. Wiley Horton (FL Bar No. 59242)
wiley@penningtonlaw.com
PENNINGTON, P.A.
215 S. Monroe Street, 2nd Floor
Tallahassee, FL  32301
850 222-3533 – office
850 222-2126 – fax
Attorneys for Defendant FCOA, LLC

## Certificate of Conferral

Pursuant to Local Rule 7.1(a)(3), FCOA conferred with FT&E regarding the relief sought in this motion.  No agreement was reached.

## Certificate of Service

I HEREBY CERTIFY that I have electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system on this 2nd day of November 2018, which will cause a notice of electronic filing to be sent to all counsel of record.

/s/ Adrienne C. Love