UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION
MIAMI DIVISION

FCOA, LLC,

       Plaintiff,

vs.                                        CASE NO. 1:17-cv-23971-KMW

FOREMOST TITLE & ESCROW, LLC,

       Defendant.

_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff FCOA, LLC ("FCOA"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, respectfully moves for summary judgment upon the entirety of this matter.  As grounds therefor, FCOA states:

1.      FCOA brings this action against defendant FOREMOST TITLE & ESCROW, LLC ("FT&E"), alleging (1) trademark infringement under 15 U.S.C. §§1114 and 1116; (2) unfair competition and false designation of origin under 15 U.S.C. §1125(a); (3) dilution under 15 U.S.C. §1125(c); (4) common law unfair competition; and (5) antidilution under section 495.151, Florida Statutes.  (Doc. 1).  Generally speaking, FCOA,[1] which owns and uses in the insurance industry many registered trademarks related to the word "FOREMOST," alleges that insurance agent FT&E is infringing FCOA's marks by offering insurance services under the similar service mark "Foremost Title & Escrow."  (Id.).

2.      Foremost Insurance Company was founded in 1952 and began using the trademark FOREMOST in connection with its insurance services and products.  (See Doc. 86, FCOA's

---

[1]     This document sometimes uses the term "FCOA" to refer to members of the group of associated insurance companies providing services under the FOREMOST Marks.

Statement of Undisputed Material Facts ("SOMF") SOMF ¶ 3).  Foremost Corporation of America was eventually formed to hold its assets and later changed its name to FCOA.  (Id.).  These entities are part of the Farmers Insurance Group.  (Id.).  FCOA, through its related entities, has consistently marketed and sold insurance products and services throughout the country under the "FOREMOST" name.  (SOMF ¶ 4).

3.    FCOA owns the entire interest and goodwill to certain trademarks, including FOREMOST (U.S. Reg. No. 1,403,411), FOREMOST INSURANCE SERVICE CENTER (No. 2,894,849), FOREMOST (No. 2,414,933), and FOREMOST (No. 1,900,833).  (SOMF ¶ 6).

4.    FT&E is a Florida title insurance agency which began operation in 2015.  FT&E operates its title insurance agency utilizing the term "Foremost" in its business name, logo, and advertising.  As a title insurance agent, FT&E is naturally operating in the insurance services industry, just as FCOA is.  FT&E is infringing FCOA's trademarks as a matter of law because (1) the FOREMOST Marks are strong, (2) the overall similarity of the parties' marks is significant ---- they both utilize the trademarked term "Foremost" both advertise themselves as simply "Foremost," and have similar logos, (3) FCOA and FT&E both operate in the insurance services industry, (4) the parties' trade channels, customers, and advertising media are similar, (5) there is some evidence of FT&E's intent to infringe FCOA's marks, and (6) there is evidence of substantial consumer confusion.

5.    FCOA is thus entitled to judgment upon the entirety of this action because: (1) FT&E's use of a substantially similar mark for similar services constitutes trademark infringement, false designation of origin and statutory and common law unfair competition as a matter of law, and (2) FT&E's use of the famous FOREMOST Marks in the insurance industry is causing dilution of FCOA's mark as a matter of law.

6.      This case is currently set for a bench trial in March 2018.  (Doc. 52).  The Court is permitted to make factual findings at this juncture.  Nunez v. Superior Oil Co., 572 F.2d 1119, 1123 (5th Cir. 1978).  While, FCOA believes the facts indisputably show that FT&E is infringing its trademark, any factual issue the Court may identify is not one of witness credibility.

WHEREFORE, FCOA respectfully requests summary judgment in its favor.

## MEMORANDUM OF LAW

FCOA is entitled to complete summary judgment because there is no genuine issue of material fact and the record evidence is undisputed that (1) FT&E's use of a substantially similar mark for similar services constitutes trademark infringement, unfair competition, false designation of origin, and common law unfair competition as a matter of law, and (2) FT&E's use of the famous FOREMOST Marks in the insurance services industry is causing dilution of FCOA's mark as a matter of law.

For over 60 years, FCOA has used the FOREMOST Marks in connection with a broad range of diverse insurance services currently provided to over 3,000,000 customers.  (SOMF ¶ 10). Over 33,000 contracted agents at more than 77,000 locations nationwide offer FOREMOST-branded insurance products.  (SOMF ¶ 11).  In 1989, the AARP formally endorsed FOREMOST, which alone allowed FCOA to reach over 38 million potential customers through FOREMOST-branded advertisements in the AARP magazine, an AARP-FOREMOST co-branded website, and direct solicitations to AARP members.  (SOMF ¶ 12).  FCOA has spent millions of dollars over the years to advertise and promote the FOREMOST Marks, including on its website, which is www.foremost.com.[2]  (SOMF ¶ 14).

---

[2]      FCOA maintains control over the quality and nature of services offered under the FOREMOST family of marks, in part by requiring all affiliated entities to use a uniform system of advertising and promotion emphasizing the word FOREMOST.  (SOMF ¶ 5).

In 2015, FT&E, a title insurance agency which offers title insurance and conducts real property closings, adopted a nearly identical mark "Foremost Title & Escrow." FT&E uses this mark in a manner which emphasizes the word "Foremost," often dropping the term "Title & Escrow" entirely. (SOMF ¶¶ 22, 36-38). FT&E markets its title insurance and closing services to the public generally, including to property buyers and sellers, who often obtain property insurance -- a product FCOA sells -- during the closing process. (SOMF ¶¶ 17, 30). When presented with the two marks in a survey conducted by FCOA's expert, 74.2% of persons who had heard of FOREMOST believed the two marks were affiliated, which is substantial evidence of confusion.[3] (SOMF ¶¶ 45-47). Jellibeans, Inc. v. Skating Clubs of Ga., Inc. 716 F.2d 833, 845 n.24 (11th Cir. 1983).

**COUNT I:  TRADEMARK INFRINGEMENT UNDER LANHAM ACT**

A defendant commits trademark infringement when, without the trademark holder's consent, it uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which "is likely to cause confusion." 15 U.S.C. §1114(1). To prevail on its infringement claims under the Lanham Act, FCOA must prove that (1) its marks have priority, and (2) there is a likelihood of consumer confusion between the FOREMOST Marks and FT&E's Mark as used in commerce. Frehling Enters., Inc. v. Int'l Select Grp., Inc., 192 F.3d 1330, 1335 (11th Cir. 1999).

Upon the second element -- a likelihood of consumer confusion -- the Eleventh Circuit examines the seven factors enumerated in Frehling: (1) the strength of FCOA's marks, including whether they have reached incontestable status, the types of mark they are, and the degree to which third parties make use of them, (2) the overall similarity of the two marks in sound, appearance,

---

[3]    FT&E did not perform a survey.

manner of use, and overall commercial impression, (3) the similarity of the products the marks represent, (4) the similarity of the parties' customers and trade channels, (5) the similarity of their advertising media, (6) the defendant's intent, and (7) actual confusion. The two most important factors are the type of mark and actual confusion. Id. at 1335.

The ultimate question the Frehling factors are attempting to address is whether consumers are likely to believe that the products or services offered by the parties are affiliated in some way. Custom Mfg. & Eng'g, Inc. v. Midway Servs., 508 F.3d 641, 649 (11th Cir. 2007). Each factor of the likelihood of confusion analysis is discussed below. All factors weigh in favor of FCOA.

<u>Plaintiff's Marks are Valid, Protectable and have Priority:</u>

As an initial matter, it is undisputed that FCOA owns federal registrations for numerous FOREMOST marks, including but not limited to U.S. Registrations 1,403,411; 2,894,849; 2,414,933; and 1,900,833. (SOMF ¶ 6). Each registration is conclusive evidence of the validity of the FOREMOST marks and FCOA's exclusive right to use them in commerce because each has achieved "incontestable" status. 15 U.S.C. §§ 1065, 1057(b).

The FOREMOST mark was first used decades prior to FT&E's first use in 2015. (SOMF ¶ 6). Additionally, many registered FOREMOST mark was filed and registered at least 10 years before 2015. (SOMF ¶ 6).[4] Because FCOA's right to priority in the FOREMOST Marks is established, this element of its infringement claim is satisfied and undisputed, and the analysis can turn to the likelihood of confusion factors.

**Type of Mark**

---

[4]    Representative FOREMOST marks were first used in 1952, 1978, 1984 and 1998 and registered in 1986, 1995, 2000 and 2004. (SOMF ¶ 6).

The first factor is the strength of FCOA's marks, including whether they have reached incontestable status, the types of mark they are, and the degree to which third parties make use of the marks. Frehling, 192 F.3d at 1335. This is one of the two most important factors in the Frehling likelihood-of-confusion analysis, and by their constant use and incontestable status, the FOREMOST Marks are strong as a matter of law. Foremost Corp. of Am. v. Burdge, 638 F.Supp. 496, 500 (D.N.M. 1986) (finding FOREMOST family of marks strong).

Here, it is undisputed that the FOREMOST Marks have reached incontestable status, which shows that the marks are strong. Dieter v. B&H Indus. of Southwest Fla., Inc., 880 F.2d 322, 329 (11th Cir. 1989). They have been used in commerce for over 60 years. A federal district court found the FOREMOST family of marks strong over 30 years ago. Foremost, 638 F.Supp. at 500 ("The word 'Foremost'. . . indicates membership in the collective group of FCOA organizations"). Since that litigation in 1986, FOREMOST has diversified its insurance business to include traditional property insurance services including landlord, fire, and homeowners' insurance. (SOMF ¶¶ 10, 16). The FOREMOST Marks are used in connection with over 33,000 contracted agents at more than 77,000 locations nationwide, 3,000,000 current customers, and the sale of numerous lines of insurance amounting to approximately 2.4 billion dollars in insurance premiums in 2017 (SOMF ¶¶ 10, 11, 15), which also tends to show that the marks are strong (and entitled to broad protection). Coach House Restaurant, Inc. v. Coach & Six Restaurants, Inc., 934 F.2d 1551, 1561 (11th Cir. 1991).

In 1989, the AARP endorsed FOREMOST, allowing FCOA to reach over 38 million potential customers through FOREMOST-branded advertisements in the AARP magazine,[5] a co-branded AARP website (www.aarpforemost.com) and direct solicitations to AARP member over

---

[5]     AARP magazine has the largest readership of any U.S. magazine.  (SOMF ¶ 13).

the last 30 years.  (SOMF ¶ 12).  FCOA has alliances with manys immediately recognizable insurance carriers including GEICO, Farm Bureau, American Family, Nationwide and USAA, which allows those companies' agents to offer FOREMOST insurance.  (SOMF ¶ 11).  From 2011 to 2016, FCOA expended over $6,000,000 per year (over $7,000,000 in 2017) to advertise and promote its marks.  (SOMF ¶ 14).  The nature and extent of the advertising and promotion of the FOREMOST marks, along with FCOA's efforts to create a "conscious connection in the public's mind" between FOREMOST and insurance services, illustrate their substantial strength and fame. 2 McCarthy, Trademarks and Unfair Competition § 11:73 (5th ed. 2018) ("The legal strength of a mark is usually the same as its economic and marketing strength").

There is also no evidence that third parties are using similar marks in the insurance services industry – no trademarks listed in the United States Trademark Registry show use of the term "Foremost" in the insurance services field.  Also, no trademarks in Trademark International Class 36, which includes the insurance and financial fields, use the term "Foremost" in connection with insurance.  (SOMF ¶ 21).  This too tends to show that the FOREMOST Marks are strong.  John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 975 (11th Cir. 1983).

In conclusion, the undisputed facts show that the FOREMOST Marks are strong and therefore entitled to a broad scope of protection.  The Foremost Marks were held by a federal district court to be strong long ago, and have been used for decades in association with the provision of insurance services by a nationally recognized insurance business.  This factor, one of the two most important in the Frehling analysis, tends squarely in favor of FCOA.

### Overall Similarity of the Marks

The second factor is the overall similarity of the two marks in sound, appearance, manner of use, and overall commercial impression.  Frehling, 192 F.3d at 1335.  A presumption of public

confusion in the marketplace arises where the infringing and genuine marks "are substantially identical both in design and use and it is undisputed that the counterfeit marks were sold to the public." <u>Monsanto Co. v. Campuzano</u>, 206 F.Supp.2d 1239, 1245 (S.D. Fla. 2002); <u>Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.</u>, 122 F.3d 1379, 1382 (11th Cir. 1997).

FCOA holds over 20 currently-registered marks which contain the term "Foremost."[6] (SOMF ¶ 6). Using this dominant common element in advertising causes the public to associate the family of FOREMOST Marks with the combination of insurance services sold under them. (SOMF ¶ 8).  "A family of marks may have a synergistic recognition that is greater than the sum of each mark."  <u>Quality Inns, Int'l v. McDonald's Corp.</u>, 695 F.Supp. 198, 212 (D. Md. 1989). "The question then becomes whether applicant's mark would be likely to be viewed as a member of opposer's . . . family of marks."  <u>7-Eleven, Inc. v. Wechsler</u>, 83 USPQ.2d 1715, 1720 (TTAB 2007).  Indeed, even where the owner has not proved a family of marks as such (though FCOA has), if the owner uses variations of its core mark, consumers may become so accustomed to the varied usage that they naturally perceive an infringer's mark as yet another variation from the same source.  <u>Humana, Inc. v. Humanomics, Inc.</u>, 3 USPQ.2d 1696, 1700 (TTAB 1987); <u>E.&J. Gallo Winery v. Consorzio del Gallo</u>, 782 F.Supp. 457 (N.D. Cal. 1991).

Therefore, even if a consumer happens upon a direct side-by-side comparison, a customer could consider "Foremost Title & Escrow" as part of the family of FOREMOST marks used in connection with insurance and home-related services.  Just as a consumer may believe that a

---

[6]     These include, for example: FOREMOST; FOREMOST MEANS MORE; FOREMOST CHOICE; FOREMOST EDUCATION; THE FOREMOST INSURANCE GUY; WHY NOT FOREMOST; FOREMOST OUTDOORS; FOREMOST PAYONLINE; TAKE FOREMOST ALONG FOR THE RIDE, GO AHEAD; TAKE FOREMOST HOME, GO AHEAD; ASK FOR FOREMOST; FOREMOST CLASSIC; FOREMOST INSURANCE SERVICE CENTER; FOREMOST AUTOLINK; FOREMOST EXPRESS; and FOREMOST BASICS.

business called Progressive Title & Escrow is related to the insurer Progressive, a consumer may believe that a business called Foremost Title & Escrow is related to the FOREMOST brand.[7]

This is particularly problematic where, as here, the defendant regularly uses the plaintiff's trademark by itself, alone, to advertise its own business. FT&E advertises "Foremost for Homeowners," "Choose Foremost," "Foremost's staff has experience in all facets of title insurance," and "Expect the Most, Close with Foremost" to the public at large in order to illustrate its services. (SOMF ¶ 36). FT&E also uses the term "Foremost" by itself as a keyword for search engine optimization in web searches. (SOMF ¶ 37). Thus, not only did FT&E adopt the FOREMOST Marks directly for use in its very business name, it refers to its own business as simply "Foremost" when advertising to both the public at large and to homeowners in particular.

In other words, the marketplace vernacular for FT&E has essentially become "Foremost," as it has in FT&E's marketing materials and its own witnesses' testimony. (SOMF ¶¶ 36-38); Health Net v. USA Healthnet, Inc., 26 USPQ.2d 1187, 1193 (C.D. Cal. 1993) (defendant's witness showed contracted term was often used). While the two marks would be similar even if FT&E were not actively advertising under the sole word "Foremost," the fact that it is regularly doing is resulting in identical usage of the marks.

And FT&E does so utilizing the most important portion of the FOREMOST Marks – the word "Foremost." Marketing Displays, Inc. v. Traffix Devices, Inc., 200 F.3d 929, 935 (6th Cir. 1999) (first part of mark is more likely to make an impression on consumer memory); Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772, 396 F.3d 1369, 1372 (Fed.

---

[7]    This is supported by the survey evidence showing that consumers believe that various types of insurance businesses and providers can offer a wide range of insurance solutions. Consumers do not differentiate between different insurance businesses. (SOMF ¶¶ 48-49). Additionally, consumers expect FT&E is an affiliated company with and/or offer products that emanate from the FOREMOST brand. (SOMF ¶¶ 48-49).

Cir. 2005).    The determination of the degree of mark similarity must consider the reality that consumers often recall only the dominant portion of the mark.  <u>Forum Corp. of N. Am. v. Forum, Ltd.,</u> 903 F.2d 434, 440 (7th Cir. 1990).  The dominant portion of FOREMOST's mark is naturally "Foremost," which FT&E is utilizing to advertise its own insurance services business.[8]

Finally, FT&E also adopted a logo which is similar to the Foremost logo.  (**Doc. 5 at 13**).  Both are rectangular.  Both utilize FCOA's trademarked word "Foremost" in bold lettering which lies directly above other wording which is smaller and non-bold.  Both contain a stylized letter "F" contained in a square logo to the left of the mark and a font with rounded corners.  These logos are similar in design, presentation and impact.  <u>Gold Kist, Inc. v. ConAgra, Inc.,</u> 708 F.Supp. 1291, 1299 (N.D. Ga. 1989) (factor weighs in favor of plaintiff where side-by-side comparison shows marks create a similar overall commercial impression"); <u>CPC Int'l, Inc. v. Balzola Foods Corp.,</u> 1984 WL 63523 *4 (S.D. Fla. 1984) (same).

In conclusion, FT&E is using FCOA's trademarked term "FOREMOST" in its business name and advertising, refers to itself solely as "Foremost" when advertising to the public, and has adopted a similar logo.  This factor weighs in favor of a finding of infringement.

### Similarity of Products or Services that Marks Represent

The third factor is the similarity of the products the marks represent.  <u>Frehling</u>, 192 F.3d at 1335. The question is whether consumers could attribute the parties' services to the same source or might believe there is an affiliation between the parties.  <u>E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.,</u> 756 F.2d 1525, 1530 (11th Cir. 1985).  This factor is established if the goods are complementary in some manner such that they would likely be encountered by the same

---

[8]      This problem is further compounded by the fact that FT&E is using the word "Foremost" at the beginning of *its* business name.

persons in situations that would give rise to a mistaken belief either that they are somehow associated with the same singular source or that there is some association between the two sources of the respective goods.  Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 257-58 (2d Cir. 1987).  Direct competition between the two parties is therefore not required.  Team Tires Plus, Ltd v. Tires Plus, Inc., 394 F.3d 831, 833-34 (10th Cir. 2005).  Additionally, strong marks reach across a broader range of goods or services than weak ones.  Turner Greenberg Assoc., Inc. v. C&C Imports., Inc., 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004).

FCOA is an insurance company which sells various insurance products, including homeowners' insurance, mobile home insurance, landlord insurance, fire insurance and business insurance covering buildings and structures, through insurance agents.  (SOMF ¶ 10).  FCOA is also an insurance agent itself.  (SOMF ¶ 4).

FT&E is an insurance agent which sells title insurance and offers real property closing services in connection with its FOREMOST mark.  (SOMF ¶ 22).  FT&E is licensed by the state of Florida to "transact insurance."  (Id.).  It advertises to the public that it "issues insurance." (SOMF ¶ 30).  And it regularly works with insurance companies in the course of its business. Thus, like FCOA, FT&E is plainly in the insurance services industry.  It is a title insurance agent which issues insurance policies.  This alone illustrates that the parties offer similar products.

However, in addition to transacting insurance as a title insurance agent, FT&E is also involved with property or homeowners' insurance in its role as a closing agent -- insurance products that FCOA issues.  When FT&E closes a real property purchase transaction, the lenders involved in that transaction often require property insurance to be obtained.  (SOMF ¶ 32).  To accomplish this, FT&E accounts for the property insurance premium on a disclosure document. (Id.).  FT&E explains the transaction documents to its closing client, including the disclosure

document enumerating the property insurance premium and confirming that insurance was obtained. (SOMF ¶ 33). FT&E then delivers copies of title insurance policies to its customer on letterhead and in envelopes bearing its FOREMOST mark. (SOMF ¶ 34). Thus, FT&E customers engaged in a closing transaction are being simultaneously presented with information regarding both property insurance and title insurance.

Therefore, not only are both FCOA and FT&E involved in the insurance business, which is alone sufficient to illustrate that the parties' products and services are similar, but both parties are insurance agents involved in those particular types of insurance a consumer typically purchases when buying property.[9]  These are similar products under the law.  Prudential Ins. Co. of Am. v. Prudential Title Co., 1976 WL 21080 *1 (S.D. Tex. 1976) (property insurer and title company held engaged in similar services); American Fid. & Lib. Ins. Co. v. American Fid. Grp., 2000 WL 1385899 *10 (E.D. Pa. 2000) (different types of personal insurance "serve similar functions in the mind of the public"); Nationwide Mut. Ins. Co. v. Tri-Continental Exch. Ltd., 2001 WL 34398158 (C.D. Cal. 2001) (question is whether services might be related in the mind of consumer, not whether defendant offered specific insurance identical to plaintiff); In re Opus One, Inc., 60 U.S.P.Q. 1812 (TTAB 2001) (restaurant services and wine are complementary because the public encounters them together).

FT&E may assert that the functions of its insurance agency/title company and FOREMOST's insurance agency/insurance company are different because FT&E does not underwrite risk.  FT&E may also assert that Florida does not allow insurers to issue both title insurance and property insurance.  These distinctions are irrelevant.  The question is not whether

---

[9]      15.5% of South Florida real estate owners who bought insurance in the past year believed that home and title insurance were the same thing, while another 19.1% did not know whether they were or not.  (SOMF ¶ 49).

the parties provide identical services, but instead only whether consumers could believe that the services provided by FCOA and FT&E derive from the same source.  Frehling, 192 F.3d at 1338.

In addition, on its website, FT&E maintains a glossary which defines for its customers and the public the terms "homeowners insurance" and "manufactured homes."  (SOMF ¶ 27).  FT&E does this to assist persons in understanding the services it offers under the FOREMOST mark.  (Id.).  FCOA markets and sells homeowners insurance and insurance for manufactured homes to the same public which can access FT&E's website.

Finally, FCOA offers traditional property insurance.  (SOMF ¶ 16).  FCOA estimates that its collections of traditional property insurance premiums will exceed $1 billion in December 2018.  (Id.).  Where a company diversifies the products under its mark, customers are more likely to associate a "non-diversified company's services with the diversified company, even though the two companies do not actually compete."  Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 258 (2d Cir. 1987).  FCOA offers many different insurance products and services under the FOREMOST Marks, so purchasers are much more likely to associate with FCOA a junior mark user offering insurance services.

In conclusion, FT&E and FCOA offer similar services under the identical FOREMOST mark. FCOA is an insurance company and insurance agency which markets and sells, among other things, homeowners and property insurance.  FT&E is a title insurance agency which not only issues insurance policies to property purchasers under a FOREMOST mark, but does so during closing transactions involving property insurance.  Both entities transact insurance.  It is easy to see how a consumer could believe that these products and services are "related in some manner." This factor also tends squarely in favor of infringement.

### Similarity of Parties' Trade Channels and Customers

The fourth factor is the similarity of the parties' customers and trade channels.  Frehling, 192 F.3d at 1335.  This factor considers "where, how, and to whom the parties' products are sold." Id. at 1339.  The threshold question is whether the customer base overlaps.  Id. at 1338.  Here, the parties' customers are virtually identical. (SOMF ¶¶ 10, 16-17, 30-31).  Both parties are acting as insurance businesses selling insurance policies.  (SOMF ¶¶ 4, 22).  Both parties' products are purchased by persons who are buying homes or other structures – FCOA is selling and transacting insurance for homes and other structures while FT&E is selling and transacting title insurance.

Many consumers simultaneously buy traditional property insurance and title insurance every day in real estate transactions.  Both parties may therefore desire to market insurance policies to persons who are buying property – FCOA because it issues and acts as the agent for issuance of homeowners' and property insurance, and FT&E because it issues title insurance.

This has already begun to happen.  FT&E markets to and provides title insurance and closing services to owners of multi-tenant dwellings who then serve as landlord of the transacted property.  (SOMF ¶ 31).  FOREMOST has a 3% market share in landlord insurance.[10]  (SOMF ¶ 16).  Therefore, property owners who are landlords are a prime example of customers who can receive title insurance through FT&E and landlord insurance through FCOA.  This is customer overlap.  Freedom Sav. & Loan Ass'n v. Way, 757 F.2d 1176, 1184-85 n.7 (11th Cir. 1985).  Both FT&E and FCOA would like to have these persons as customers.

In conclusion, the parties' trade channels and customers are similar.  Both parties market and sell products sold to purchasers of real property.

### Similarity of Parties' Advertising Media

---

[10]     A 3% share is substantial. Nationwide holds 3% of the property/casualty insurance market. https://www.iii.org/fact-statistic/facts-statistics-insurance-company-rankings.

The fifth factor is the similarity of the parties' advertising media.  Although both parties use the same advertising media, differences in advertising media are not particularly probative if the same customers are ultimately targeted or reached.  Visible Sys. Corp. v. Unisys Corp., 551 F.3d 65, 73-74 (1st Cir. 2008).  Therefore, this factor considers not only the advertising media but which customers that media targets.

Both parties utilize online advertising, websites and social media, which are designed to advertise services offered under the FOREMOST Mark and attract customers to them.  (SOMF ¶¶ 7, 17, 25).  Like FCOA's online media, FT&E targets homeowners, landlords and developers and explains that it offers insurance services along with references to insurance, insurance coverage, and agency services.  (SOMF ¶¶ 17, 25, 30).

For example, a user entering FT&E's website immediately encounters a pop-up window stating, "Let Foremost help you buy your next home."[11]  Therefore, a customer visiting FT&E's website is first told that it has contacted "Foremost" and only later is informed that it has actually contacted Foremost *Title & Escrow*.

In addition, a Google search for "Foremost Miami" return results on the first page for both FT&E and FCOA's websites.  (SOMF ¶ 43).  This is understandable since both FT&E and FCOA use the term "FOREMOST" as a Google keyword.  (SOMF ¶¶ 20, 37).  Both parties utilize magazine ads and brochures to reach their customer base.  (SOMF ¶¶ 12, 18, 29).  Both attend trade shows, advertise through public events, and engage in direct email/mail to homeowners.  (SOMF ¶¶ 12, 18, 28).  These parties' advertising are thus also similar, so this factor too weighs in favor of infringement.

---

[11]     www.fortitle.net, accessed November 1, 2018.  (SOMF ¶ 26)

**Intent**

The sixth factor is the defendant's intent: a likelihood of consumer confusion is more apt to exist if the defendant intended to utilize a mark similar to the plaintiff's.  Frehling., 192 F.3d at 1335.[12]  Some courts have held that an inference of intent to confuse consumers is present from the senior user's long use and wide advertising of it if there is a strong similarity between the marks.[13]  MY-T Fine Corp. v. Samuels, 69 F.2d 76, 77 (2d Cir. 1934).

Here, FT&E claims that when first forming its business, it conducted a search for similar marks, selected its name, and established its website without discovering the FOREMOST Marks or FCOA's website, which is www.foremost.com.  (SOMF ¶ 24).  However, a standard USPTO search for the term "Foremost" within international class 036 (which includes title insurance agency services) returns 20 results, 17 of which are FCOA's registered FOREMOST Marks.[14] (Doc. 5-2, Ex. 1)  A Google search for "Foremost Title Insurance" brings up the FCOA website near the top of the first page.  (SOMF ¶ 44).  Because the FOREMOST marks have been publicly used for a long time, a fact which is discernible through a USPTO search for the word "Foremost," and can be found on the internet simply by searching that word, the Court may find intent exists here.  But there is another reason intent exists.

---

[12]    Evidence of a defendant's intent is not necessary to establish that consumer confusion is likely, Jellibeans, 716 F.2d at 843, so this factor can be discounted.

[13]    Intent can also be inferred from FT&E's familiarity with the insurance industry.  Wynn Oil Co. v. American Way Serv. Corp., 736 F. Supp. 746 (E.D. Mich. 1990) (junior user's familiarity with trade made denial of knowledge incredible).

[14]    The remaining marks are World Foremost Bank, Building Foremost Companies and BFC Building Foremost Companies which provide different commercial impression by including wording prior to the term "Foremost" and offering distinguishable services (banking and credit card services and financial investment services for business acquisition consultation).

Despite receiving actual notice of FCOA's FOREMOST marks rights in December 2016, FT&E continued to advertise and promote its infringing mark and services to consumers in the same channels of trade utilized by FCOA. (SOMF ¶¶ 39-41). This continues to trade on FCOA's consumer goodwill. A junior user's refusal to cease use of a mark after a warning or demand from the senior user can constitute intentional infringement. Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1206 (11th Cir. 2008); Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc., 823 F.Supp. 1077, 1088 (S.D.N.Y. 1993) (continued use after demand to stop "tends to indicate a measure of bad faith"). Here, FT&E refused to modify the mark after a demand from FCOA.[15]

### Actual Confusion

The seventh factor is actual confusion. Frehling Enters., 192 F.3d at 1335. Though it exists here, actual confusion is not necessary to show a likelihood of consumer confusion. Id. FT&E has conducted only around 20 real property closings, so there was little chance of finding evidence of actual confusion amongst its past customers. (SOMF ¶ 35). This is no impediment to a finding of infringement or it would penalize FCOA for acting to protect its trademark before serious damage has occurred. Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Credito, 832 F.3d 15, 36 (1st Cir. 2016).

However, if the Court desires to consider actual confusion, there is evidence of it here even so. Survey evidence showing substantial confusion may support summary judgment on infringement, Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp., 148 F.3d 417, 423 (4th Cir. 1998), and here FCOA has uncontroverted survey evidence that consumers are confused. FCOA's expert

---

[15] FT&E refused to modify its mark even though, according to FT&E, no customer has ever come to Foremost Title & Escrow because of its name. (SOMF ¶ 40)

Dr. Thomas Maronick conducted a survey of South Florida homeowners which showed that 74% of consumers who had heard of FOREMOST believed that FOREMOST INSURANCE COMPANY and FOREMOST TITLE & ESCROW were affiliated. (SOMF ¶¶ 45-47).  Much lower rates of confusion are deemed sufficient to show actual confusion.  Jellibeans, Inc.. 716 F.2d at 845 n.24; Gateway, Inc. v. Companion Prods., Inc, 384 F.3d 503, 510 (8th Cir. 2004).  FT&E did not perform a survey; it has no evidence to contradict this conclusion.

### Conclusion

As a matter of law, there is likelihood of confusion between the parties' marks as a matter of law.  FCOA's marks are strong, which is perhaps the most important factor – the marks have reached "incontestable" status, have been used for over 60 years, and were recognized by a federal district court as strong long ago.  FT&E is advertising itself to the public as "Foremost," which is exactly identical to FCOA's marks.  Even if it were not, the parties' marks are similar in wording and overall layout.   The parties operate in the same industry – insurance services.  They both transact insurance.  Both parties' products are utilized by consumers purchasing property.  As a matter of law, consumers are likely confused by this overall set of facts, where FT&E is providing insurance services utilizing the name "Foremost."   Thus, FT&E is infringing the FOREMOST Marks, and FCOA is entitled to summary judgment upon count I of its complaint.


### COUNTS II & IV: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

The legal standard for a common law or Lanham Act unfair competition claim is essentially the same as the standard for trademark infringement.  Florida Int'l Univ. Bd. of Trustees v. Fla. Nat. Univ., Inc., 91 F.Supp.3d 1265, 1284-85 (S.D. Fla. 2015).  Thus, just as FCOA is entitled to

summary judgment upon its claim for trademark infringement, it is entitled to summary judgment on counts II and IV as well.

### COUNTS III & V: FEDERAL AND STATE DILUTION

A plaintiff is entitled to summary judgment where there is no genuine issue of material fact and "(1) the mark is famous, (2) the defendant used the plaintiff's mark after it became famous, (3) the defendant's use was in commerce, and (4) the defendant's use of the mark has likely caused dilution." Id. at 1286.  FCOA has established these elements for its federal dilution claim under 15 U.S.C. §1125 and Florida law claims under Fla. Stat. §495.151.[16]

First, the FOREMOST Marks are famous.  They are "widely recognized by the general consuming public of the U.S. as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).  Fame is determined by weighing four factors.[17]  15 U.S.C. § 1125(c)(2)(A).  First, the FOREMOST brand has been advertised and publicized by FCOA, AARP and independent publications through the nation for over 60 years including through AARP since 1989, reaching 38 million potential customers nationwide – 2.7 million in Florida.  (SOMF ¶¶ 10, 12, 19).  Second, as early as 1961 goods and services offered under the FOREMOST Marks were sold in nearly every state, amounting to over 3,000,000 current customers nationwide, insurance premiums amounting to approximately 2.4 billion dollars in 2017 (81 million in Florida).  (SOMF ¶¶ 9, 10, 15).  Third, due to the widespread promotion and use consumers recognize the FOREMOST mark and associate it with insurance services.  (SOMF ¶¶ 10, 11, 14).  Fourth, the

---

[16]    The standard for establishing a dilution claim under Florida law is essentially the same as that of a dilution claim under Lanham Act.  Id.

[17]    Federal factors include (i) the duration, extent and geographic reach of advertising and publicity of the mark, (ii) the amount, volume, and geographic extent of sales of goods or services offered, (iii) the extent of actual recognition of the mark, and (iv) whether the mark is federally registered on the principal register.

FOREMOST brand is significantly protected by registration of over 20 marks including the mark FOREMOST on the principal register.  (SOMF ¶ 6).  All factors weigh in favor of a finding of fame.  Florida Int'l, 91 F.Supp.3d at 1287 (fame from "widespread use of marks for 50 years" and regular advertising and promotion of marks).

Second, it is undisputed that FT&E began to use the mark after it became famous.  FT&E first began to use the mark in 2015.  (SOMF ¶ 23).

Third, FT&E's use of the mark likely caused dilution of the FOREMOST Marks by causing consumers to connect them with different products or services.  Dilution by blurring is evaluated on six factors: (i) degree of similarity of the marks, (ii) degree of inherent or acquired distinctiveness, (iii) extent to which the mark is used exclusively, (iv) degree of recognition, (v) intent of defendant, and (vi) actual association between the marks.  15 U.S.C. § 1125(c)(2)(B). FCOA respectfully directs the Court to FCOA's detailed likelihood of confusion analysis above, which factually follows the enumerated dilution factors.  The two FOREMOST marks are identical as used. (SOMF ¶¶ 6, 36-38, 42). FCOA's FOREMOST marks have acquired substantial distinctiveness and renown through exclusive use within the insurance industry. (SOMF ¶¶ 3, 5-19, 21).  FT&E intent can be inferred from the strikingly similarity between the marks and the purported failure to identify the FOREMOST marks through PTO and web-searches.  (SOMF ¶¶ 6, 21, 42, 44).  Additionally, FT&E did not cease use of the mark when notified of the FOREMOST marks (SOMF ¶¶ 39-41).  Consumers do associate the two marks.  (SOMF ¶¶45-49).  FT&E's mark dilutes the distinctive quality of FCOA's FOREMOST Marks by causing consumers to associate the FOREMOST Marks with different products or services.  Thus, FCOA is entitled to summary judgment on Counts III & V.

Respectfully submitted this 2nd day of November, 2018.

    /s/ Adrienne Love    
Adrienne C. Love (FL Bar No. 21835)
adrienne@penningtonlaw.com
J. Wiley Horton (FL Bar No. 59242)
wiley@penningtonlaw.com
William D. Horgan (FL Bar No. 176877)
whorgan@penningtonlaw.com
PENNINGTON, P.A.
215 S. Monroe Street
2nd Floor
Tallahassee, FL  32301
850 222-3533 – office
850 222-2126 – fax
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

A copy of the foregoing motion and incorporated memorandum of law was filed with the Court using the CM/ECF system, on November 2, 2018, which will send notification of such filing to all counsel of record.

    /s/Adrienne C. Love