UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-23971-Civ-WILLIAMS/TORRES

FCOA, LLC,

    Plaintiff,

v.

FOREMOST TITLE & ESCROW
SERVICES, LLC,

    Defendant.

_____/

## ORDER ON PLAINTIFF'S MOTION TO EXCLUDE
## THE TESTIMONY OF DAVID MILTON AND CARLOS ZULUAGA

This matter is before the Court on FCOA, LLC's ("Plaintiff") motion to exclude the testimony of Foremost Title & Escrow Services, LLC's ("Defendant") experts, David Milton ("Mr. Milton") and Carlos Zuluaga ("Mr. Zuluaga"). [D.E. 80]. Defendant responded on November 26, 2018 [D.E. 101] to which Plaintiff replied on December 3, 2018. [D.E. 107]. Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion, response, reply, and relevant authority, and for the reasons discussed below, Plaintiff's motion is **GRANTED**.

### *I.  APPLICABLE LEGAL PRINCIPLES AND LAW*

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*,

509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702.[1] The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as "gatekeeper," its duty is not "to make ultimate

---

[1] Rule 702 states the following:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

To facilitate this process, district courts engage in a three part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

Furthermore, in determining the *reliability* of a scientific expert opinion, the Eleventh Circuit considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257,

3

1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

## II. ANALYSIS

Plaintiff's motion aims to exclude two of Defendant's experts – Mr. Milton and Mr. Zuluaga. Mr. Milton is a licensed insurance adjuster with an opinion that it is unreasonable to expect that any consumer would be confused between Plaintiff and Defendant because insurance companies and title companies serve different functions. Mr. Zuluaga, who works for Lion Fuse Digital Media (the company that

4

created Defendant's website), holds four opinions[2] about Defendant's marketing practices. Because both Mr. Milton and Mr. Zuluaga fail to meet one or more of the *Daubert* requirements, Plaintiff concludes that they must be excluded at trial.

### A. *Whether Mr. Milton's Expert Opinions Should be Excluded*

Plaintiff's first argument is that Mr. Milton's expert opinion is defective because he did not conduct any testing, research, analysis, or investigation. In fact, Plaintiff claims that Mr. Milton did nothing scientific to reach his conclusions and that his opinions (which took a mere three hours to form) are based solely on his experience working in the insurance industry, conversations with defense counsel, and a conversation with his wife. That is, Plaintiff argues that Mr. Milton's opinions lack any scientific methodology and are entirely unreliable because they do not measure the likelihood of consumer confusion among the general public.

Plaintiff also identifies many other deficiencies in Mr. Milton's expert opinions. Plaintiff claims, for example, that Mr. Milton did not conduct a survey or perform any other type of scientific analysis to determine whether consumers could be confused by the source of services between an insurance company and a title company. Plaintiff even points out that Mr. Milton did not know what type of scientific analysis experts might use to determine whether consumer confusion exists. Rather, Mr. Milton purportedly assumed that consumers are likely to know that an insurance company functions differently than a title insurance company and

---

[2] Mr. Zuluaga opined (1) that Defendant's branding is not to be confused with Plaintiff's branding, (2) that Defendant is attempting to reach a different market than Plaintiff, and (3) that the keywords Defendant uses for search engine optimization are not intended to interference with any other company.

that he relied on his wife to confirm his hypothesis. Because Mr. Milton relied on pure speculation, used no methodology, made a series of unfounded assumptions, and failed to consider any information about consumer perception, Plaintiff concludes that Mr. Milton's expert opinions must be excluded as unreliable.

Defendant's response is that a scientific methodology is not required because Mr. Milton is qualified to serve as an expert witness because of his twenty-three years of experience in the insurance industry. Defendant claims that Mr. Milton possesses extensive knowledge about the insurance industry and that his testimony is important because it exceeds that of an average layman. That is, Defendant suggests that Mr. Milton's testimony is significant because it will help explain the differences between property and casualty insurance as compared to title insurance.

Defendant also challenges Plaintiff's contention that a lack of methodology renders Mr. Milton's opinions as defective. Instead, Defendant argues that the reliability standard does not require "that the opinion is objectively correct, but only that the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008) (internal citation omitted). Because Mr. Milton is an experienced insurance adjuster who has ample knowledge of how the property and casualty industries operate, Defendant concludes that Mr. Milton's opinions are reliable.

6

"The reliability standard is established by Rule 702's requirement that an expert's testimony pertain to 'scientific . . . knowledge,' since the adjective 'scientific' implies a grounding in science's methods and procedures, while the word 'knowledge' connotes a body of known facts or of ideas inferred from such facts or accepted as true on good grounds." *Daubert*, 509 U.S. at 580. This entails an assessment of whether the "methodology underlying the testimony is scientifically valid." *Id*. at 592. The four non-exhaustive factors used to evaluate the reliability of a scientific expert opinion include the following:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier*, 387 F.3d at 1262 (citations omitted).

"Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Tech,* 326 F.3d at 1341. When determining whether a party has met its burden, "[a] trial judge has 'considerable leeway' in deciding how to determine when a particular expert's testimony is reliable and how to establish reliability." *Coconut Key Homeowners Ass'n, Inc. v. Lexington Ins. Co.,* 649 F. Supp. 2d 1363, 1371 (S.D. Fla. 2009) (quoting *Graff v. Baja Marine Corp.,* 310 F. App'x 298, 302 (11th Cir. 2009)). Accordingly, "[t]o the extent that expert opinions are derived from literature review, witness interviews and data analysis, they are not

7

automatically rendered unreliable by their non-susceptibility to empirical verification." *United States v. Levinson,* 2011 WL 1467225, at *4 (S.D. Fla. Mar. 17, 2011) (citing *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC,* 555 F.3d 1331, 1338 (11th Cir. 2009)).

Here, Plaintiff's arguments are well taken because Mr. Milton opined on the likelihood of consumer confusion in the market but – by his own admission – did not base his opinions on any scientific testing or methodology. In paragraph 13 of his affidavit, Mr. Milton opines that it is unreasonable to expect consumers to confuse an insurance company with a title company:

> Therefore, in my opinion, it would not be reasonable to expect that a consumer could confuse an insurance company with a title company based upon the two entities having a common word in their names due to the total lack of any logical relationship between business functions of the two entities. Moreover, especially where one entity identifies itself in its company name as an insurance company and the other company identified itself as a title and escrow services company, there is no rational basis for there to be any consumer confusion between the two entities that would be reasonable to expect.

[D.E. 22-3].

The primary problem with Mr. Milton's opinions is that he failed to use any methodology. When questioned during his deposition, Mr. Milton conceded that he did nothing scientific in reaching his conclusions:

> Q. Did you do anything to analyze, in reaching your opinions, whether consumers could perhaps become confused by the source of services being provided by an insurance company and a title company, if they don't know the difference in functions?
> A. Did I do anything scientific? No. I did, however . . . ask my wife . . . .

[D.E. 22-3 at 34]. While Mr. Milton stated that he spoke with his wife about his

8

hypothesis, it is entirely unclear how this renders Mr. Milton's opinion as reliable. Defendant claims, on the other hand, that no methodology is needed because Defendant is qualified as an expert. Yet, this argument misses the mark because it is the *reliability* of the opinions at issue – not Mr. Milton's qualifications – and it is beyond the generic experience of an industry expert to opine on consumer confusion in the marketplace without a scientific analysis.

A related defect in Mr. Milton's approach is that he merely assumed (without any scientific support) that his wife was a fair representation of a layperson. We are sure she is a lovely person, but even if Mr. Milton's wife was a fair representation of a layperson who did not confuse an insurance company with a title company, it is unclear how Mr. Milton can then conclude with any degree of confidence that this is a representative sample of how the general public perceives this issue. Making matters worse, Mr. Milton only spent approximately *three hours* developing his opinions and did nothing else to examine whether consumers would be confused between an insurance company with a title company. Instead of relying on his wife and making unfounded assumptions, Mr. Milton should have formed his opinions through consumer surveys or another measurable scientific yardstick. *See Patsy's Italian Rest., Inc. v. Banas*, 531 F. Supp. 2d 483, 485–86 (E.D.N.Y. 2008) ("The usual method to introduce evidence on the issue of likelihood of confusion is through consumer surveys.") (citing *Rush Indus., Inc. v. Garnier LLC,* 496 F. Supp. 2d 220, 227 (E.D.N.Y. 2007) ("A Plaintiff asserting trademark infringement typically offers evidence of consumer confusion by way of a well designed consumer

9

survey.") (citations omitted)). That is, Rule 702 does not allow for 3-hour shortcuts. Because Mr. Milton's opinions are unsupported, unreliable, conclusory, and speculative, Plaintiff's motion to exclude the expert testimony of Mr. Milton is **GRANTED**.[3]

### B. *Whether Mr. Zuluaga's Expert Opinions Should be Excluded*

Next, Plaintiff argues that Mr. Zuluaga's expert opinions should be excluded because Defendant violated Rule 26(a)(2). Plaintiff claims that Defendant did not timely disclose Mr. Zuluaga as an expert witness. In February 2018, Plaintiff acknowledges that Defendant served its initial Rule 26(a)(1) disclosures identifying Mr. Zuluaga as a person likely to have discoverable information that Defendant may use to support its defenses. Defendant states, for example, that Mr. Zuluaga "is the CEO and Creative Director of Lion Fuse Digital Media, LLC . . . who was hired by FT&E to perform graphic design services for FT&E, including FT&E's website . . . and to perform ongoing internet marketing and search engine optimization services for FT&E." [D.E. 80].

Six months later, on August 15, 2018, Defendant served its expert disclosures. But, Plaintiff claims that Defendant failed to identify Mr. Zuluaga as an expert witness or indicate that he prepared an expert report in this case. On September 28, 2018, Plaintiff deposed Mr. Zuluaga as a corporate representative. About halfway through the deposition, Plaintiff's counsel learned for the first time that Mr. Zuluaga was an expert witness and that Mr. Zuluaga's November 2017

---

[3] We note that Plaintiff only challenged Mr. Milton's opinions as unreliable – not under the qualifications or helpfulness prongs.

affidavit in response to a motion for preliminary injunction constituted an expert report:

> Q. Before we left, Mr. Stok said that you're an expert witness in this matter; is that accurate?
> A. Yes.
> Q. Are you retained by Foremost Title & Escrow in this case to serve as an expert witness?
> A. Yes.
> Q. On what subjects?
> A. On anything pertaining to website, email marketing, online marketing, and really any marketing efforts for the company.
> Q. Did you prepare a Rule 26 expert report?
> A. No.
> Q. Do you know what a Rule 26 expert report is?
> MR. STOK: We filed an affidavit.
> MR. HORGAN: Hang on. Let him answer the question first.
> MR. STOK: Okay.
> THE WITNESS: Can I say I don't know?
> Q. Sure, if it's true. I mean, you should say whatever is true. Do you know what Rule 26 is?
> A. I don't.
> Q. What opinions do you hold as an expert witness that you intend to give at trial?
> A. Anything that – again, anything that is pertaining to the marketing efforts and website of Foremost
> MR. STOK: That's the expert report that he filed earlier in the case. You have known about his involvement as an expert since October of last year.
> Q. Alright. Tell me what opinions you intend to offer. I understand what the topics are. Tell me what the opinions are.
> MR. STOK: Why don't we show him his report?
> MR. HORGAN: You can show him his affidavit.
> MR. STOK: Yeah, it's his report.
> MR. HORGAN: I think that may be a point of contention but I understand your view.

[D.E. 80]. Plaintiff therefore contends that it only became known that Mr. Zuluaga was an expert witness during his deposition on September 28, 2018 and that Defendant violated the Court's Scheduling Order when it failed to disclose Mr.

Zuluaga on or before August 15, 2018.

Plaintiff also argues that Mr. Zuluaga should be excluded at trial because he failed to prepare a Rule 26 expert report. Plaintiff suggests that Mr. Zuluaga's November 2017 affidavit is not an expert report because it fails to mention that Mr. Zuluaga holds any opinions, nor does it identify any facts or data that he reviewed. And even if the affidavit did constitute an expert report, Plaintiff believes that Defendant failed to disclose that Mr. Zuluaga was an expert that may be used at trial when it came time to do so on August 15, 2018 as required in the Court's Scheduling Order. Because Defendant disclosed Mr. Zuluaga as an expert witness on September 28, 2018 in violation of the Court's Scheduling Order, Plaintiff concludes that Mr. Zuluaga's expert opinions are inadmissible at trial.

Defendant's response is that it disclosed Mr. Zuluaga[4] as a witness in November 2017 and that its failure to prepare an expert report is misplaced. Defendant argues, for example, that the expert report requirement under Rule 26(a)(2)(B) does not apply to Mr. Zuluaga because that provision only applies "to (i) a witness who is retained or specially employed to provide expert testimony in the case; or (ii) to a witness whose duties as an employee of the party regularly involve giving expert testimony." *In re Tess Commc'ns, Inc.*, 291 B.R. 535, 537 (Bankr. D. Colo. 2003). Defendant also suggests that Plaintiff cannot claim that it has been prejudiced because Plaintiff had almost a year to prepare effective cross-

---

[4] Defendant states that Mr. Zuluaga intends to testify about Defendant's marketing practices, the geographic regions where Defendant's goods and services are marketed, Defendant's website, marketing themes, and the graphic depictions of Defendant's logo.

12

examination and arrange for rebuttal witnesses.

Federal Rule of Civil Procedure 26(a)(2)(A) provides that "a party must disclose to the other parties the identity of any witnesses it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). This disclosure must include "a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The report must also contain the following information: a complete statement of all the opinions the expert plans to express and the basis for them, the data considered by the expert in forming the opinions, any exhibits intended to be used in summarizing or supporting the opinions, the experts' qualifications including a list of all authored publications in the previous ten years, a list of all the other cases in which the witness testified as an expert during the previous four years, and a statement of the compensation the expert is to receive for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi). These disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C).

"Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise . . . compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. Southern Co.,* 390 F.3d 695, 728 (11th Cir. 2004) (internal citation omitted), *overruled on other grounds, Ash v. Tyson Foods, Inc.,* 546 U.S. 454 (2006). To this end, Rule

37(c)(1) provides a self-executing sanction for untimely expert reports. In relevant part, Rule 37(c)(1) states that [i]f a party fails to provide the information required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Substantial justification is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Ellison v. Windt,* 2001 WL 118617(M.D. Fla. Jan. 24, 2001) (quotation and citation omitted). A failure to timely make the required disclosures is harmless when there is no prejudice to the party entitled to receive the disclosure. *See Home Design Servs. Inc. v. Hibiscus Homes of Fla., Inc.,* 2005 WL 2465020 (M.D. Fla. Oct. 6, 2005). The party failing to comply with Rule 26(a) bears the burden of establishing that its non-disclosure was either substantially justified or harmless. *See Surety Assocs., Inc. v. Fireman's Fund Ins. Co.,* 2003 WL 25669165 (M.D. Fla. Jan. 7, 2003).

It is undisputed that Defendant failed to comply with the Federal Rules in timely disclosing Mr. Zuluaga as an expert in this case. To excuse its failure, Defendant claims that Plaintiff suffered no prejudice because Plaintiff had an opportunity to depose Mr. Zuluaga on September 28, 2018 – one business day before the discovery period ended on October 1, 2018. But, Defendant's argument rings hollow because Defendant has failed to show any reason why the expert disclosure deadline could not have been met with the exercise of due diligence. While Plaintiff

deposed Mr. Zuluaga on September 28, 2018, that was approximately six weeks after the deadline to disclose Mr. Zuluaga as an expert in this case and one business day prior to the discovery deadline.

The importance of observing deadlines contained in a Scheduling Order is recognized in Rule 16(b), where it provides that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge . . . ." Fed. R. Civ. P. 16(b). The Advisory Committee notes to Rule 16 also point out that "[t]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* Furthermore, the Eleventh Circuit has found that "[t]his good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *White v. Volvo Trucks of N. Am., Inc.*, 211 F.R.D. 668, 670 (M.D. Ala. 2002) (quoting *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1418 (11th Cir. 1998)). And where a party fails to abide by the deadlines for disclosure in a Scheduling Order, merely demonstrating a lack of prejudice to the opposing party is insufficient to justify late disclosures. *Id.*

Here, there is nothing in Defendant's response that establishes good cause for Defendant's failure to comply with the expert disclosure deadline set in the Court's Scheduling Order. And Defendant fails to explain how it exercised due diligence in disclosing its expert when the time do so passed six weeks prior to Mr. Zuluaga's deposition. While Defendant listed Mr. Zuluaga "as a fact witness in its initial disclosures, the failure to identify him as an expert before the court's deadline

15

constitutes a failure to disclose." *Scarff Bros., Inc. v. Bullseye Dispatch, Inc.*, 2016 WL 7365198, at *2 (N.D. Ga. Sept. 14, 2016) (citing *Morrison v. Mann*, 244 F.R.D. 668, 674 (N.D. Ga. 2007) (striking expert in part because plaintiff failed to identify him as an expert in its initial disclosures)).

Making matters worse, the disclosure of Mr. Zuluaga as an expert occurred halfway through a deposition on September 28, 2018 – one business day before the close of the discovery period. This effectively limited Plaintiff's ability to seek discovery on Mr. Zuluaga as an expert in this case because his status as an expert only became known at the eleventh hour before the discovery deadline. *See Morrison v. Mann*, 244 F.R.D. 668, 672–73 (N.D. Ga. 2007) ("[T]he appropriateness of a party's justification turns upon whether the party knew or should have known that an expert was necessary before the late stages of the discovery period.") (citation omitted). Absent the reopening of discovery and the delay of trial, for which no motion has been made, Defendant's delay of disclosing Mr. Zuluaga cannot stand. *See Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 2009 WL 1043974 (M.D. Fla. Apr. 17, 2009).

We acknowledge that untimely expert disclosures may in some circumstances be excused depending on the length of the delay, but motions to exclude experts have routinely been granted in cases involving a delay of seven weeks and in circumstances where the party fails to set forth good cause for the delay. *See, e.g.*, *White*, 211 F.R.D. at 670 (granting defendants' motion to strike because plaintiff disclosed an expert witness seven weeks late); *see also Ballard v. Krystal*

16

*Restaurant,* 2005 WL 2653972 (M.D. Ala. Oct. 17, 2005) (granting defendant's motion to strike because plaintiff waited two and a half months to disclose its expert). And in this case, Defendant has failed to demonstrate any due diligence in meeting the Court's Scheduling Order six weeks after the deadline to do so. We therefore conclude that Defendant's failure to timely disclose its expert was not substantially justified or harmless and that Plaintiff's motion to exclude the expert testimony of Mr. Zuluaga is **GRANTED**.[5]

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's motion to exclude the testimony of Defendant's expert witnesses is **GRANTED**. [D.E. 80].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of January, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[5] While Mr. Zuluaga's expert opinions are inadmissible at trial, Mr. Zuluaga may testify as a fact witness and provide lay opinion testimony on subjects on which he has personal knowledge. *See, e.g., Neff v. Kehoe,* 708 F.2d 639, 643-44 (11th Cir. 1983) (holding that even though the plaintiff was "not tendered as an expert," he should have been permitted to give his "lay opinion" as to the value of his coin collection, which was "based upon coin collector publications, upon appraisals he received from various collectors and upon his own experience as owner of the collection").