UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-23971-Civ-WILLIAMS/TORRES

FCOA, LLC,

    Plaintiff,

v.

FOREMOST TITLE & ESCROW
SERVICES, LLC,

    Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF DR. THOMAS MARONICK

This matter is before the Court on Foremost Title & Escrow Services, LLC's ("Defendant") motion to exclude the testimony and expert report of Dr. Thomas Maronick ("Dr. Maronick"). [D.E. 79]. FCOA, LLC ("Plaintiff") responded to Defendant's motion on November 14, 2018 [D.E. 90] to which Defendant replied on November 21, 2018. [D.E. 100]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, and relevant authority, and for the reasons discussed below, Defendant's motion is **GRANTED in part** and **DENIED in part**.[1]

---

[1] On November 27, 2018, the Honorable Kathleen Williams referred Defendant's motion to the undersigned Magistrate Judge for disposition.

## I. APPLICABLE LEGAL PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702.[2] The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova,*

---

[2] Rule 702 states the following:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as "gatekeeper," its duty is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

To facilitate this process, district courts engage in a three part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

Furthermore, in determining the *reliability* of a scientific expert opinion, the Eleventh Circuit considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional

3

factors that may advance its Rule 702 analysis. *Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

## II. ANALYSIS

Defendant's motion seeks to strike Dr. Maronick[3] and his expert report because he failed to comply with the Federal Rules. Plaintiff retained Dr. Maronick to assess consumers' perceptions to determine whether, if at all, consumers perceive Plaintiff and Defendant as competitors in the Florida real estate market. Dr. Maronick's survey concluded that 74.2% of respondents who had heard of Foremost Insurance Company believed that Defendant was affiliated with it. Defendant argues that Dr. Maronick's report should be excluded because (1) it violates the Federal Rules, (2) it contains methodological flaws, (3) it draws from the wrong universe of consumers, (4) it relies on an improper sample size, and (5) its conclusions are based on a defective survey. Defendant also alleges that the questions presented are improper and that they undermine Dr. Maronick's credibility. Because the findings in Dr. Maronick's report are unreliable and irrelevant, Defendant concludes that Dr. Maronick's expert opinions must be entirely excluded.

### A. *Whether Dr. Maronick's Report Should be Excluded for Violating Rule 26(a)(2)(B)*

Defendant's primary argument is that Dr. Maronick failed to comply with Federal Rule 26(a)(2)(B) because he did not provide a complete statement of the reasons for his opinions. Defendant also contends that Dr. Maronick failed to disclose the facts and data he considered in forming his opinions and that this is not

---

[3] Dr. Maronick is a Doctor of Business Administration and an emeritus professor of marketing at Towson University College of Business and Economics.

the first time that he has committed this mistake.[4] Plaintiff's response is that Defendant did not provide an example of any specific piece of information omitted from Dr. Maronick's expert report and that Defendant's argument should be disregarded.

Federal Rule 26(a) requires that any expert report contain the following information:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). These requirements are to be taken very seriously as Rule 26(a) was intended not only to prevent surprise to opposing counsel, but to decrease the need for expert depositions and thereby conserve the resources of both parties. *See* Fed. R. Civ. P. 26 Advisory Committee Notes (1993); *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 741 n.6 (7th Cir. 1998).

Federal Rule 37(c)(1) states that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or

---

[4] Defendant references a deposition of Dr. Maronick's in a case based in the Southern District of New York.

witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This Rule "requires absolute compliance with Rule 26(a)." *Roberts ex rel. Johnson v. Galen of Virginia, Inc.,* 325 F.3d 776, 782 (6th Cir. 2003) (quoting *Vance v. United States,* 1999 WL 455435, at *3 (6th Cir. June 25, 1999)). When an expert report does not provide the required disclosures under Rule 26(a)(2)(B), "the sanction of exclusion is *automatic and mandatory* unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Johnson,* 325 F.3d at 782 (quoting *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 (7th Cir. 1998)) (emphasis added); *see also Walbridge Aldinger Co. v. Aon Risk Servs., Inc. of Pennsylvania,* 2007 WL 1219036, at *1 (E.D. Mich. Apr. 25, 2007) (finding that an expert report containing only minor omissions-such as merely failing to disclose the expert's compensation-should not be struck under Rule 37(c)(1) because the minor harm caused to opposing party does not justify striking the report). This means that "the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise . . . [and therefore] compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. Southern Co.,* 390 F.3d 695, 728 (11th Cir. 2004) (internal citation omitted), *overruled on other grounds, Ash v. Tyson Foods, Inc.,* 546 U.S. 454 (2006).

Substantial justification is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Ellison v. Windt,* 2001 WL 118617 (M.D. Fla.

7

Jan. 24, 2001) (quotation and citation omitted). The advisory committee notes to Rule 37 "strongly suggests that 'harmless' involves an honest mistake on the part of the party coupled with sufficient knowledge on the part of the other party." *Borg v. Chase Manhattan Bank U.S.A.,* 247 F. App'x 627, 637 (6th Cir. 2007) (citation omitted). The burden of proof is on the potentially sanctioned party to prove harmlessness or justification. *See Johnson,* 325 F.3d at 782; *Salgado,* 150 F.3d at 741-42; *Wilson v. Bradlees of New England, Inc.,* 250 F.3d 10, 21 (1st Cir. 2001); *Heidtman v. County of El Paso,* 171 F.3d 1038, 1040 (5th Cir. 1999).

Here, Defendant claims that Dr. Maronick failed to provide a complete statement of the reasons for his opinions, including the facts and data he considered. Defendant's argument, with respect to the data considered, is well taken because the most that we can discern from the expert report is that some unspecified set of data was collected from an internet survey platform – Qualtrics.com – with an indeterminate sample drawn from an internet panel of individuals named Vanguard who agreed to participate in internet surveys. This vague and conclusory contention is unhelpful because Dr. Maronick never explains the data sets, the internet survey platform, or how this relates to the panel of individuals acquired from Vanguard. Indeed, Dr. Maronick never clarifies the data that Qualtrics.com offers or its relationship with Vanguard.

Putting aside those problems, Dr. Maronick mentions that he followed Qualtrics.com's standard practices – without any explanation of what those practices are – and states that an unspecified number of panel members were sent

8

an email message inviting them to participate in an online survey. The confusion is then compounded when Dr. Maronick asserts that 201 respondents completed the survey and that this data set forms the basis for his opinions. Without any specificity in the expert report, the data composition is unclear – including how Dr. Maronick compiled it in forming his opinions. Because Dr. Maronick's report is unclear on the "data or other information considered by the witness in forming" his opinions, we conclude that Dr. Maronick's expert report violates Rule 26. Fed. R. Civ. P. 26(a)(2)(B)(ii).[5]

Notwithstanding the lack of clarity on the data component of Dr. Maronick's expert report, Dr. Maronick should be afforded an opportunity to supplement his expert report to make clear the data he considered. The trial date in this case is not until March 4, 2019 [D.E. 42] – meaning Defendant has no viable argument that it will be prejudiced because it deposed Dr. Maronick on his findings and the expert report substantially complied with the requirements in Rule 26. Therefore, Defendant's motion to exclude the testimony of Dr. Maronick is **GRANTED in part**

---

[5] While we find that Dr. Maronick's expert report fails to contain the necessary information on the data reviewed and how that formed his opinions, Defendant's broader argument that Dr. Maronick's report fails to include any reasons for his opinions lacks merit. Dr. Maronick's report explicitly includes a section on the basis for his opinions and it summarizes the answers of respondents that support Dr. Maronick's conclusion. While the expert report could have been far more comprehensive in its reasoning, the information provided satisfies the requirements in Rule 26. In other words, the basis for Dr. Maronick's opinions are the respondents' answers to the survey questions presented. We therefore conclude that Defendant's argument on the alleged failure to include any reasons in support of Dr. Maronick's expert report misses the mark.

and **DENIED in part** and any supplemental expert report must be served within fourteen (14) days from the date of this Order.

### B. *Whether Dr. Maronick's Report is Unreliable*

Defendant's next argument is that Dr. Maronick's expert report is unreliable because it contains numerous methodological defects. First, Defendant claims that Dr. Maronick used an improper universe for his survey. The Maronick report included participants that purchased real estate in the past two years, but Defendant claims that Dr. Maronick did not inquire about whether those participants intended to purchase real estate or title insurance in the future. Defendant believes that the survey fails to include the full range of potential customers that are relevant in determining customer confusion. Second, Defendant asserts that the sample size is not representative of a target population because it is limited only to those individuals pulled from an internet panel. Defendant suggests that the survey sample suffers from selection bias and anyone other than potential purchasers of Defendant's goods and services are irrelevant. Third, Defendant argues that the survey performed is inadequate because it fails to simulate market conditions. And fourth, Defendant challenges Dr. Maronick's survey because it includes improper questioning techniques (i.e. leading questions that fail to reduce bias) and that its flawed design renders the survey results unreliable. Therefore, Defendant concludes that both the report and the expert testimony of Dr. Maronick must be excluded.

Plaintiff's response is that Defendant's arguments lack merit because "this is a non-jury trial," meaning "the gatekeeping purpose of *Daubert* is not implicated." *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 616 F. Supp. 2d 1250, 1256 (M.D. Fla. 2009); *see Bristol–Myers Squibb Co. v. Andrx Pharms., Inc.,* 343 F. Supp. 2d 1124, 1131 (S.D. Fla. 2004) ("The Court agrees that the question of reliability and relevance in this case is merely one of degree . . . This is especially true since this is a bench trial, where the Court must evaluate the evidence regardless of whether it ultimately decides to exclude it . . . Thus, some courts have held that, in cases where the judge is the factfinder, *the criteria for finding evidence admissible can be applied less strictly."*) (emphasis added) (internal citations omitted); *see Taubensee Steel & Wire Co. v. Macsteel Int'l USA Corp.,* 2011 WL 1651239, at *4 (N.D. Ill. May 2, 2011) ("The Court notes that while the *Daubert* standards apply in a bench trial, concerns about the trier of fact being fooled by evidence of dubious merit are lessened when the judge is acting in that role. The Court is capable of evaluating this evidence and giving it the weight that it deserves.") (internal citations omitted). Plaintiff claims that, even if Dr. Maronick's opinions are unreliable, there is no jury to be misled and that the Court should evaluate the evidence regardless of whether it ultimately decides to exclude it. As such, Plaintiff concludes that the Court should allow Dr. Maronick's opinions without any further inquiry and give it the weight that it deserves when this case is decided on the merits.

Alternatively, Plaintiff requests that Defendant's motion be denied because any alleged flaws in the expert report go to the weight of the results – not the survey's admissibility. *See, e.g., Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 844–45 (11th Cir. 1983) (finding that "(1) poor sampling; (2) inexperienced interviewers; (3) poorly designed questions; and (4) other errors in execution," are "technical deficiencies [that] affect the survey's weight . . . and not its admissibility.") (citing *Exxon Corp. v. Texas Motor Exchange,* 628 F.2d 500, 507 (5th Cir. 1980); *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 264 (5th Cir. 1980); *Holiday Inns, Inc. v. Holiday Out In Am.*, 481 F.2d 445, 447 (5th Cir. 1973) ("[T]he district court properly admitted the survey evidence in this case, leaving the format of the questions and the manner of conducting the survey for consideration as to the weight of the evidence.")); *see also C.A. May Marine Supply Co. v. Brunswick Corp.,* 649 F.2d 1049, 1055 n.10 (5th Cir. 1981) (finding that "[i]f the inadequacies in the survey had been technical, such as the format of the question or the manner in which it was the survey [sic] was taken, those shortcomings would have borne on the weight of the evidence, not its admissibility.")).

As an initial matter, district courts enjoy extremely broad discretion to admit expert testimony in a bench trial because there are no longer concerns about "dumping a barrage of questionable scientific evidence on a jury." *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1310 (11th Cir. 1999) (recognizing that the jury "would likely be even less equipped than the judge to make reliability and relevance determinations and more likely than the judge to be awestruck by the expert's

12

mystique"); *Brown,* 415 F.3d at 1268-69 ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."); *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002) ("*Daubert* requires that trial courts act as "gatekeepers" to ensure that speculative, unreliable expert testimony *does not reach the jury*.") (emphasis added). That is, "[t]he safeguards outlined in *Daubert* are less essential in a bench trial," because a judge need not gatekeep for herself. *M.D. v. Abbott*, 152 F. Supp. 3d 684, 709 (S.D. Tex. 2015) (citing Gibbs v. Gibbs, 210 F.3d 491, 500 (5th Cir. 2000)). Therefore, while the *Daubert* requirements may not be as rigid as in the case of a bench trial, the court may consider whether an expert report and testimony fall woefully short of its expectations.

With that being said, Defendant's motion – to exclude Dr. Maronick's expert report and testimony because of methodological defects – is unpersuasive. The general rule is that "methodological flaws in a survey bear on the weight the survey should receive, not the survey's admissibility." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004) (citing *C.A. May Marine Supply Co. v. Brunswick Corp.,* 649 F.2d 1049, 1055 n. 10 (5th Cir. 1981)). Defendant claims that the exception to the general applies because Dr. Maronick's flaws are so severe that any reliance on them is entirely unreasonable. *See Bank of Tex. v. Commerce Southwest, Inc.,* 741 F.2d 785, 789 (5th Cir. 1984) (upholding judgment notwithstanding the verdict even though verdict was supported by survey evidence).

But, we disagree because this is not a case where a wholesale exclusion of an expert report is justified based on the record presented. Defendant has certainly raised valid arguments as to the weight and flaws in the expert report, but there is nothing in the survey where we can conclude at this time that it is "so badly flawed" that no reasonable juror could view the survey as evidence of confusion among consumers. *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir. 1984). Therefore, Defendant's motion to exclude Dr. Maronick's expert report and his testimony is **DENIED**.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's motion to exclude the expert report and testimony of Dr. Maronick is **GRANTED in part** and **DENIED in part**. [D.E. 79]. Any supplemental expert report must be served within fourteen (14) days from the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of January, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge