UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-23971-Civ-WILLIAMS/TORRES

FCOA, LLC,

    Plaintiff,

v.

FOREMOST TITLE & ESCROW
SERVICES, LLC,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO EXCLUDE
## THE EXPERT REPORT AND TESTIMONY OF RHONDA HARPER

This matter is before the Court on Foremost Title & Escrow Services, LLC's ("Defendant") motion to exclude the testimony and expert report of Rhoda Harper ("Ms. Harper"). [D.E. 77]. FCOA, LLC ("Plaintiff") responded to Defendant's motion on November 13, 2018 [D.E. 88] to which Defendant replied on November 20, 2018. [D.E. 94]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, and relevant authority, and for the reasons discussed below, Defendant's motion is **DENIED**.[1]

### *I.    APPLICABLE LEGAL PRINCIPLES AND LAW*

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the

---

[1] On November 27, 2018, the Honorable Kathleen Williams referred Defendant's motion to the undersigned Magistrate Judge for disposition. [D.E. 102].

1

admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702.[2] The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256

---

[2] Rule 702 states the following:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

(11th Cir. 2002). Also, in its role as "gatekeeper," its duty is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

To facilitate this process, district courts engage in a three part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

Furthermore, in determining the *reliability* of a scientific expert opinion, the Eleventh Circuit considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in

3

case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

## II.  ANALYSIS

Defendant's motion seeks to strike the insurance consumer survey report (the "Survey Report"), the insurance consumer behavior report (the "Insurance Report") (collectively, the "Harper Reports"), and Ms. Harper's expert testimony. Plaintiff designated Ms. Harper to serve as its expert witness to opine on the issue of confusion in the public with respect to the parties' respective marks. Defendant argues that Ms. Harper must be excluded as an expert because she is unqualified

4

and her methodology in the Harper Reports is unsound. Defendant also claims that the Harper Reports are questionable because they include speculative comments. Because the findings in the Harper Reports are unreliable, irrelevant, and unsupported, Defendant concludes that Ms. Harper's expert opinions must be excluded.

### A. *Whether Ms. Harper's Report Should be Excluded for Violating Rule 26(a)(2)(B)*

Defendant's primary argument is that Ms. Harper failed to comply with Federal Rule 26(a)(2)(B) because she did not (1) provide a complete statement of the reasons for her opinions nor did she (2) disclose the data she considered in forming her opinions. Plaintiff's response is that Defendant did not provide an example of any specific piece of information omitted from Ms. Harper's expert reports and that Defendant's argument should be disregarded.

Federal Rule 26(a) requires that any expert report contain the following information:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). These requirements are to be taken very seriously as Rule 26(a) was intended not only to prevent surprise to opposing counsel, but to decrease the need for expert depositions and thereby conserve the resources of both parties. *See* Fed. R. Civ. P. 26 Advisory Committee Notes (1993); *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 741 n.6 (7th Cir. 1998).

Federal Rule 37(c)(1) states that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This Rule "requires absolute compliance with Rule 26(a)." *Roberts ex rel. Johnson v. Galen of Virginia, Inc.,* 325 F.3d 776, 782 (6th Cir. 2003) (quoting *Vance v. United States,* 1999 WL 455435, at *3 (6th Cir. June 25, 1999)). When an expert report does not provide the required disclosures under Rule 26(a)(2)(B), "the sanction of exclusion is *automatic and mandatory* unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Johnson,* 325 F.3d at 782 (quoting *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 (7th Cir. 1998)) (emphasis added); *see also Walbridge Aldinger Co. v. Aon Risk Servs., Inc. of Pennsylvania,* 2007 WL 1219036, at *1 (E.D. Mich. Apr. 25, 2007) (finding that an expert report containing only minor omissions-such as merely failing to disclose the expert's compensation-should not be struck under Rule 37(c)(1) because the minor harm caused to opposing party does not justify striking the report). This means that "the expert witness discovery rules are designed to allow both sides in a case

6

to prepare their cases adequately and to prevent surprise . . . [and therefore] compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. Southern Co.,* 390 F.3d 695, 728 (11th Cir. 2004) (internal citation omitted), *overruled on other grounds, Ash v. Tyson Foods, Inc.,* 546 U.S. 454 (2006).

Substantial justification is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Ellison v. Windt,* 2001 WL 118617 (M.D. Fla. Jan. 24, 2001) (quotation and citation omitted). The advisory committee notes to Rule 37 "strongly suggests that 'harmless' involves an honest mistake on the part of the party coupled with sufficient knowledge on the part of the other party." *Borg v. Chase Manhattan Bank U.S.A.,* 247 F. App'x 627, 637 (6th Cir. 2007) (citation omitted). The burden of proof is on the potentially sanctioned party to prove harmlessness or justification. *See Johnson,* 325 F.3d at 782; *Salgado,* 150 F.3d at 741-42; *Wilson v. Bradlees of New England, Inc.,* 250 F.3d 10, 21 (1st Cir. 2001); *Heidtman v. County of El Paso,* 171 F.3d 1038, 1040 (5th Cir. 1999).

Here, Defendant claims that Ms. Harper failed to provide a complete statement of the reasons for her opinions and failed to disclose the facts and data she considered in forming her opinions. Defendant's argument is unpersuasive because Ms. Harper provided a comprehensive explanation of her findings and opinions – including a detailed section on the method, design, and data that she considered. Ms. Harper also included appendices to her reports for additional background information. While Defendant claims that Ms. Harper's report fails to

7

meet the requirements in Rule 26, Defendant failed to direct the Court's attention to any omissions that should have been included in the reports and, upon an independent review, we can find none. As such, Defendant's argument – that the Harper Reports are defective under Rule 26 – lacks merit.

### B. *Whether Ms. Harper's Reports are Unreliable*

Defendant's next argument is that the Harper Reports are unreliable because they contain numerous methodological defects. First, Defendant claims that Ms. Harper used an improper universe for her reports because they were under-inclusive and that failed to include (1) insurance agents who market and sell insurance under Plaintiff's marks, (2) real estate closing agents, (3) banking personnel, (4) realtors, (5) mortgage bankers, and (6) real estate developers. Second, Defendant contends that the surveys failed to replicate market conditions. Third, Defendant asserts that Ms. Harper used leading questions and did not give participants an opportunity to independently articulate the services that Defendant offered. Fourth, Defendant alleges that the surveys were not properly administered and failed to include control questions. Because the Harper Reports suffer from numerous methodological defects, Defendant concludes that they must be excluded.

Plaintiff's response is that Defendant's arguments lack merit because "this is a non-jury trial," meaning "the gatekeeping purpose of *Daubert* is not implicated." *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.,* 616 F. Supp. 2d 1250, 1256 (M.D. Fla. 2009); *see Bristol–Myers Squibb Co. v. Andrx Pharms., Inc.,* 343 F. Supp. 2d 1124, 1131 (S.D. Fla. 2004) ("The Court agrees that the question of

8

reliability and relevance in this case is merely one of degree . . . This is especially true since this is a bench trial, where the Court must evaluate the evidence regardless of whether it ultimately decides to exclude it . . . Thus, some courts have held that, in cases where the judge is the factfinder, *the criteria for finding evidence admissible can be applied less strictly.*") (emphasis added) (internal citations omitted); *see Taubensee Steel & Wire Co. v. Macsteel Int'l USA Corp.*, 2011 WL 1651239, at *4 (N.D. Ill. May 2, 2011) ("The Court notes that while the *Daubert* standards apply in a bench trial, concerns about the trier of fact being fooled by evidence of dubious merit are lessened when the judge is acting in that role. The Court is capable of evaluating this evidence and giving it the weight that it deserves.") (internal citations omitted). Plaintiff claims that, even if Ms. Harper's opinions are unreliable, there is no jury to be misled and that the Court should evaluate the evidence regardless of whether it ultimately decides to exclude it. As such, Plaintiff concludes that the Court should allow Ms. Harper's opinions without any further inquiry and give them the weight that they deserve when this case is decided on the merits.

Alternatively, Plaintiff requests that Defendant's motion be denied because any alleged flaws in the expert report go to the weight of the results – not the survey's admissibility. *See, e.g., Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 844–45 (11th Cir. 1983) (finding that "(1) poor sampling; (2) inexperienced interviewers; (3) poorly designed questions; and (4) other errors in execution," are "technical deficiencies [that] affect the survey's weight . . . and not

its admissibility.") (citing *Exxon Corp. v. Texas Motor Exchange,* 628 F.2d 500, 507 (5th Cir. 1980); *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 264 (5th Cir. 1980); *Holiday Inns, Inc. v. Holiday Out In Am.*, 481 F.2d 445, 447 (5th Cir. 1973) ("[T]he district court properly admitted the survey evidence in this case, leaving the format of the questions and the manner of conducting the survey for consideration as to the weight of the evidence.")); *see also C.A. May Marine Supply Co. v. Brunswick Corp.,* 649 F.2d 1049, 1055 n.10 (5th Cir. 1981) (finding that "[i]f the inadequacies in the survey had been technical, such as the format of the question or the manner in which it was the survey [sic] was taken, those shortcomings would have borne on the weight of the evidence, not its admissibility.")).

As an initial matter, district courts enjoy extremely broad discretion to admit expert testimony in a bench trial because there are no longer concerns about "dumping a barrage of questionable scientific evidence on a jury." *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1310 (11th Cir. 1999) (recognizing that the jury "would likely be even less equipped than the judge to make reliability and relevance determinations and more likely than the judge to be awestruck by the expert's mystique"); *Brown,* 415 F.3d at 1268-69 ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."); *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002) ("*Daubert* requires that trial courts act as "gatekeepers" to ensure that speculative, unreliable expert testimony *does not reach the jury*.") (emphasis added). That is, "[t]he safeguards outlined in *Daubert* are less essential in a bench trial," because a judge need not

gatekeep for herself. *M.D. v. Abbott*, 152 F. Supp. 3d 684, 709 (S.D. Tex. 2015) (citing Gibbs v. Gibbs, 210 F.3d 491, 500 (5th Cir. 2000)). Therefore, while the *Daubert* requirements may not be as rigid as in the case of a bench trial, the court may consider whether an expert report and testimony fall woefully short of its expectations.

To that end, Defendant's motion to exclude the Harper Reports because of methodological defects is unpersuasive. The general rule is that "methodological flaws in a survey bear on the weight the survey should receive, not the survey's admissibility." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004) (citing *C.A. May Marine Supply Co. v. Brunswick Corp.,* 649 F.2d 1049, 1055 n. 10 (5th Cir. 1981)). Defendant claims that the exception to the general applies because Ms. Harper's expert opinions are so severe that any reliance on them is entirely unreasonable. *See Bank of Tex. v. Commerce Southwest, Inc.,* 741 F.2d 785, 789 (5th Cir. 1984) (upholding judgment notwithstanding the verdict even though verdict was supported by survey evidence).

But, we disagree because this is not a case where a wholesale exclusion of an expert report is justified based on the record presented. Defendant has certainly raised valid arguments as to the weight and flaws in the expert report, but there is nothing in the survey where we can conclude at this time that it is "so badly flawed" that no reasonable juror could view the survey as evidence of confusion among consumers. *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir.

11

1984). Therefore, Defendant's motion to exclude Ms. Harper and her expert testimony is **DENIED**.

C.  *Whether Ms. Harper is Unqualified*

Defendant's final argument is that Ms. Harper is unqualified to serve as an expert in this case. Defendant claims that Ms. Harper testified in her deposition that she obtained her expertise in consumer surveys by reading about them and that she was never trained nor educated on consumer surveys. Defendant also suggests that Ms. Harper was unable to answer even the most basic of questions during her deposition and that this shows Ms. Harper's lack of knowledge of the insurance industry. Defendant notes, for example, that Ms. Harper was not able to recall a single name of a title insurance company that she used in the last forty transactions and that her reports must be entirely excluded. That is, Defendant concludes that there is ample evidence to find that Ms. Harper is unqualified to render an expert opinion given the facts of this case.

An expert may be qualified to testify in multiple ways: "'by knowledge, skill, experience, training, or education'" and "not necessarily unqualified simply because her experience does not precisely match the matter at hand." *Furmanite Am., Inc. v. T.D. Williamson, Inc.,* 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) (citing *Maiz,* 253 F.3d at 665, 669). "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting *Jack v. Glaxo*

*Wellcome, Inc.,* 239 F. Supp. 2d 1308, 1314–16 (N.D. Ga. 2002)). "In other words, a district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address." *Clena Investments, Inc.*, 280 F.R.D. at 661 (citing *City of Tuscaloosa,* 158 F.3d at 562–63).

Determining an expert's qualifications is not a stringent inquiry "and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (citations omitted); *see also Johnson v. Big Lots Stores, Inc.,* 2008 WL 1930681, *14 (E.D .La. Apr. 29, 2008) (summarizing *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 507 n. 10 (5th Cir. 1999), as "explaining that after an individual satisfies the relatively low threshold for qualification, the depth of one's qualification may be the subject of vigorous cross-examination"); *see also Martinez v. Altec Indus., Inc.,* 2005 WL 1862677, *3 (M.D. Fla. Aug. 3, 2005) (quoting *Rushing,* 185 F.3d at 507 ("As long as some reasonable indication of qualifications is adduced . . . qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity")). After a review of the relevant issues and an expert's qualifications, "the determination regarding qualification to testify rests within the district court's discretion." *Clena Investments, Inc.*, 280 F.R.D. at 661 (citing *Berdeaux v. Gamble Alden Life Ins. Co.,* 528 F.2d 987, 990 (5th Cir. 1976) (footnote omitted)).

Here, Defendant's argument that Ms. Harper is unqualified lacks merit because she possesses an appropriate educational and professional background to serve as an expert on the issues presented. She has a Bachelor of Science from Illinois State University and a Master's in Business Administration from Emory University. She also has a substantial work history (1) as Vice President of Marketing at Sam's Club, (2) as the Global Director of Marketing Communications at UPS, (3) as the marketing promotion director for Nabisco, and (4) as the Vice President of Marketing at VFI. She has led, designed, and conducted consumer and marketing research studies for these companies and taught courses on marketing at American University and Fairleigh Dickinson University. While Ms. Harper may not have been able to answer specific questions aimed at consumer confusion in the marketplace, she is objectively qualified based on her experience and educational history.

Defendant's assertion, that Ms. Harper is not an insurance licensure or regulatory expert, also misses the mark because "[a]n expert is not necessarily unqualified simply because [her] experience does not precisely match the matter at hand." *Furmanite Am., Inc.,* 506 F. Supp. 2d at 1129) (citing *Maiz,* 253 F.3d at 665). That is, where an expert has congruent experience, "[t]he Committee Note to the 2000 Amendments of Rule 702 . . . explains that '[n]othing in this amendment is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony.'" *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702 Advisory Committee's note (2000 amends.)).

Therefore, based on a review of the Harper Reports and Ms. Harper's credentials, Ms. Harper is at least minimally qualified to serve as an expert in this case and any gaps in her experience do not preclude admission of her testimony or expert opinions. Defendant may, of course, raise its arguments as to Ms. Harper at trial as they relate to her credibility and the weight of her testimony, but Defendant's motion at this time must be **DENIED**. *See Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009) ("[S]o long as the expert is at least minimally qualified, gaps in his qualifications generally will not preclude admission of his testimony, as this relates more to witness credibility and thus the weight of the expert's testimony, than to its admissibility.") (citing *Trilink Saw Chain, LLC v. Blount, Inc.,* 583 F. Supp. 2d 1293,1304 (N.D. Ga. 2008)).

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's motion to exclude the expert report and testimony of Ms. Harper is **DENIED**. [D.E. 77].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of February, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge